## H. W. ALBERT v. EDGEWATER BEACH BUILDING CORPORATION AND OTHERS.[1]

June 23, 1944.

No. 33,750.

*Joseph L. Nathanson,* for appellant.

*Arthur H. Lindeman,* for respondents H. W. Albert, Acme Building Cleaning Company, William W. Wohler, Charles Wheeler Nicol, and Acme Building Cleaning Company as assignee of Conroy Bros.

*W. W. Gibson,* for respondent Victor Carlson & Sons, Inc.

*Samuel G. Smilow,* for respondent Findley Electric.

*Oscar G. Johnson, Louis B. Schwartz, Samuel D. Finkelstein, Kelly, Berglund & Johnson, Oscar A. Brecke,* and *Neil M. Cronin,* for remaining respondents.

[1]Reported in 15 N. W. (2d) 460.

THOMAS GALLAGHER, JUSTICE.

This is an appeal from an order denying the motion of the defendant Edgewater Beach Building Corporation to vacate (1) certain findings and conclusions of the trial court and the judgment entered pursuant thereto; and (2) a certain stipulation executed by counsel for both parties wherein the aforesaid findings and conclusions were stipulated to be true and correct and the court was requested to sign and file the same with the same effect as though the action had been tried on the merits. The property involved is the so-called "Calhoun Beach Club" near Lake Calhoun in Minneapolis, construction of which was suspended some years ago. Appellant's motion was based upon the contention that its counsel had not been authorized to execute the stipulation, which in effect fixed and determined the amounts due various lien claimants and authorized the entry of lien judgments for such stipulated amounts.

The construction work out of which the liens arose was commenced in June 1941 and suspended the following October because of the nonpayment of accounts owing the contractors and materialmen. The first lien statement was filed December 15, 1941. Various meetings were called thereafter between the lien claimants and Harry S. Goldie, one of the officers of appellant, wherein the latter sought additional time to permit it to raise funds to finance the property. The lien creditors coöperated in this effort as fully as possible without jeopardizing their lien rights. They repeatedly delayed commencing action in the hope that settlement of the claims might be effected without litigation.

The action to foreclose the liens was not commenced until August 1942, almost at the end of the full year allowed under Minn. St. 1941, § 514.12, subd. 3 (Mason St. 1940 Supp. § 8501). The case was set for trial February 17, 1943. Appellant sought additional time, and, after repeated continuances, the case was finally assigned for trial on May 14, 1943. At that time the stipulation and detailed proposed findings were presented by counsel for the lien claimants. It had been executed by counsel for all parties except appellant. Previously, on April 27, 1943, it had been presented to appellant's

counsel, Seth Lundquist, who thereafter advised counsel for the lien claimants that he had submitted the same to his client, Mr. Goldie, for examination and consideration prior to the date of the trial. After some conversation between counsel in the courtroom, an agreement was reached as to attorneys' fees to be inserted in the stipulation and order for judgment, and Mr. Lundquist thereupon executed and filed the stipulation with the court.

Prior to the execution thereof, counsel had agreed to a stay of 60 days before the entry of judgment thereunder. Mr. Lundquist, in support of the motion here involved, now asserts that he executed the stipulation upon the representations of counsel for the lien claimants and with the understanding, orally expressed in the courtroom, that he would be permitted additional time before the entry of judgment to check the amounts claimed to be due by the various lien claimants, which amounts he now asserts were in dispute. This is denied by counsel for the lien claimants, who assert that the 60-day stay had been agreed upon in advance to permit appellant additional time to refinance.

Judgment was not entered until August 1943. On July 10, 1943, Mr. Goldie, as secretary of appellant, wrote all the lien claimants as follows:

"July 10, 1943.

"To the Calhoun Beach Club Lienors
Minneapolis, Minn.
"Dear Sirs:

*"As you know, in order to save trial time, expense and court costs and attorney's fees for all concerned in the Calhoun Beach Club lien matter, on May 14th our attorney, Seth Lundquist, entered into a stipulation with your attorneys for the allowance of the respective liens for the full amount claimed.*

"While the signing of this stipulation was somewhat premature because we were then carrying on negotiations with some of the lienors for an adjustment of their claims, the sixty day 'Stay' granted by the Court before filing your lien Judgments was much appreciated. Our not insisting on this 'get together' during this

'Stay' period has been principally due to the fact that our negotiations with a branch of the War Department have been continuously going on, * * *.

"These negotiations are still actively going on and we are still in hopes that the Government will take over the building and therefore that the amounts due the lien holders will be paid to them as soon as a deal is consummated. We therefore ask you to contact your attorney immediately and ask him to agree to our request that no further action be taken in the case for another sixty days. *Your claims will be in no way endangered, as the stipulation already filed protects each of you fully.* On the other hand, if judgment should be entered at this time, during our pending negotiations for sale or leasing of the property, it undoubtedly will bring up a serious situation and cause involvements which will affect financially all of us concerned. We believe you realize that our success in a deal for this property will mean your success. Therefore we ask your cooperation and your prompt attention to this request. * * * [Italics supplied.]

> "Yours very truly,
> "(Signed) H. S. Goldie.
> "H. S. Goldie, Secretary,
> "Edgewater Building Corporation."

On October 14, 1943, just prior to the date fixed for the sheriff's sale under the lien judgments, appellant moved to vacate and set aside the judgments entered, on the ground that the stipulation had been executed by counsel for appellant without authority. At the hearing on this motion, appellant was represented by new counsel. Mr. Lundquist appeared in support of the motion and filed a lengthy affidavit in connection therewith. Nowhere therein did he state that he had executed the stipulation without authority, nor did he specifically deny the affirmation in the affidavit of Arthur H. Lindeman, counsel for some of the lien claimants, that he had stated that subsequent to the time the affidavit had been submitted to him he, Lundquist, in turn had submitted it to his client, Mr. Goldie, for examination prior to execution. Mr. Goldie submitted

an extensive affidavit in support of the motion. With reference to the principal issue involved, he stated merely that "said Lundquist was without authority to enter into such stipulation." He did not deny that the stipulation had been submitted to him before its execution, and further admitted that he signed and forwarded the letter of July 10, 1943, above referred to.

The issues presented for determination here are: (1) Whether counsel for appellant was authorized to execute the stipulation in question; and (2) if so, whether he was induced to execute it by fraudulent representations on the part of counsel for various lien claimants, as he now asserts. Both issues present fact questions.

█ The rule is well settled that when the trial court upon a motion passes upon fact questions, either upon oral or written evidence, its determination will not be reversed unless the same is palpably contrary to the evidence. In this connection it has been held that the trial court is better able than this court to determine the value of affidavits of attorneys. Southern Minnesota I. & L. Co. v. Livingston, 117 Minn. 421, 136 N. W. 8.

Minn. St. 1941, § 481.08 (Mason St. 1927, § 5690), sets forth the statutory authority of an attorney as follows:

"An attorney may bind his client, at any stage of an action or proceeding, by agreement made in open court or in the presence of the clerk, and entered in the minutes by such clerk, or made in writing and signed by such attorney. During any proceeding or action the attorney may receive money claimed therein by his client, and within two years after judgment, upon payment thereof, may discharge the claim or acknowledge satisfaction of the judgment; but all such authority shall cease upon the substitution of another attorney."

This statute has been construed at various times not to authorize counsel to settle or compromise his client's right of action without express authorization from the client. As stated in Gibson v. Nelson, 111 Minn. 183, 187, 126 N. W. 731, 733, 31 L.R.A.(N.S.) 523, 137 A. S. R. 549:

"The general trend of authority in other states, where the question has been presented and passed upon, sustains the proposition that an attorney has not by implication the right to compromise his client's cause of action, and, though the courts are not in full harmony upon the subject, the great preponderance of the adjudicated cases agree in so declaring the law."

See, also, Matteson v. Blaisdell, 148 Minn. 352, 182 N. W. 442.

On the other hand, if there is support in the affidavits here for a finding that the stipulation was entered into with the knowledge and consent of appellant, even though there be other affidavits in conflict therewith, we cannot hold that the trial court abused its discretion in concluding that the stipulation here was authorized. As stated in Miller v. Natwick, 110 Minn. 448, 451, 125 N. W. 1022, 1023:

"If the affidavits presented to the trial court in opposition are credible—and of this it was the judge—the evidence is amply sufficient to sustain a finding that the attorneys who stipulated for judgment were fully authorized to do so by the defendant, who then fully understood the whole matter, and consented thereto after the whole matter had been discussed at length by him, his brother, and his attorneys."

See, also, Bates v. Bates, 66 Minn. 131, 68 N. W. 845.

The matter of vacating a stipulation of this kind is entirely discretionary with the trial court. As stated in National Council v. Scheiber, 141 Minn. 41, 46, 169 N. W. 272, 274:

"* * * Relieving a party from a stipulation made by him or his attorney rests in the judicial discretion of the court; and, unless it appears that this discretion has been abused, the action of the court in granting or refusing an application to vacate or disregard a stipulation will not be reversed by an appellate court."

Here, there is ample support in the affidavits to sustain the trial court's order that appellant not only authorized the stipulation, but in fact ratified and confirmed it after it was executed. The letter

of July 10, 1943, in itself would be sufficient to sustain the court's action in this respect, and should effectively estop appellant from asserting that the stipulation was unauthorized, after it had taken full advantage of the 60-day stay provided for therein. 2 Dunnell, Dig. & Supp. § 3218.

■ The claim that the stipulation was executed because of assurances by counsel for the lien claimants that counsel for appellant would be permitted additional time to recheck the claims and make adjustments of those found incorrect merits little consideration. Whatever representations were made along this line were made at the time the stipulation was executed in open court before Judge Levi M. Hall, who likewise executed the order for judgment and denied the present motion. If some such representations had been made, he would have been aware of them, and it is unlikely that under such circumstances he would have made the present order. We cannot accede to the viewpoint that the numerous able and reputable counsel representing the lien claimants would have resorted to such tactics or that the experienced counsel representing appellant would have executed a stipulation wherein such a vital and important matter was not clearly expressed.

Affirmed.