Harold LORAAS, Plaintiff and Respondent,

v.

James L. CONNOLLY and Phyllis Connolly,
Defendants and Appellants.

No. 8058.

Supreme Court of North Dakota.

Nov. 19, 1964.

---

C. F. Kelsch, Mandan, for defendants and appellants (William C. Kelsch, Mandan, on oral argument).

Floyd B. Sperry, Bismarck, for plaintiff and respondent.

BURKE, Judge.

Plaintiff brought this action to recover a balance of $5,000.00 alleged to be due upon a $20,000.00 note. Defendants' admitted the execution of the $20,000.00 note and of a real property mortgage to secure it, but alleged that the debt had been compromised for $15,000.00 and the mortgage satisfied. They also alleged that an action at law to recover part of a debt which had been secured by a real property mortgage violated statutes regulating procedure for actions to collect debts secured by real property mortgages.

A pretrial conference in the case was, in effect, converted to a trial of the merits, before the trial judge without a jury. Both plaintiff and defendant testified at length and many exhibits were introduced in evidence. At the close of the testimony both sides moved for judgment. The trial court thereupon made findings of fact and conclusions of law and ordered judgment for the plaintiff. Judgment was entered accordingly and defendants have appealed from the judgment. No question is raised as to trial procedure nor as to the propriety of the issues submitted to the court below for decision.

Plaintiff and defendant, James Connolly, as partners, had been engaged in ranching in Mercer County. On December 11, 1954, they entered into an agreement dissolving the partnership. In carrying out the terms of this agreement defendants executed and delivered to plaintiff a note for $20,000.00 payable in four annual installments of $5,000.00 each and a real estate mortgage to secure the note. These instruments were dated December 11, 1954, and the first annual payment on the indebtedness was to become due December 1, 1955.

On December 12, 1955, the attorney for plaintiff notified the defendant, James Connolly, that he had been engaged to collect the payment due December 1, 1955. On December 15, 1955, Connolly called upon the attorney for plaintiff, told him that he was attempting to borrow money to refinance all of his indebtedness and offered to pay $10,000.00 cash and give a new note for $5,000.00 in full settlement of his indebtedness to plaintiff, if the loan negotiations were successful. By a letter written the same day plaintiff's attorney submitted this offer to plaintiff but advised against its acceptance. Plaintiff, by a letter to his attorney dated December 19, 1955, rejected the offer.

On December 22, 1955, plaintiff's attorney wrote to Jim Connolly that plaintiff had rejected his offer but suggested: "He might take $15,000.00 in cash and if you think you could manage that you could perhaps let me know." Accordingly, Connolly made arrangements to raise the money and on December 28, 1955, told the attorney for plaintiff that the Equitable Life Insurance Co. would allow him $15,000.00 in cash to pay up his indebtedness to plaintiff.

Plaintiff's attorney told Connolly that he had no authority to compromise his client's claim but that he would present the offer to his client for approval. Plaintiff's attorney did submit Connolly's offer by a letter dated December 29, 1955, but he advised his client not to accept the offer unless Connolly would also give a new note for the balance of the indebtedness in excess of the $15,000.00 cash payment. The attorney did not advise Connolly of his proposed modifications of Connolly's offer. Plaintiff notified his attorney that he accepted the proposal as modified by the attorney's suggestions.

On January 5, 1956, plaintiff's attorney, by letter, notified his client that Connolly had agreed to sign the additional note and asked him to send him the satisfaction of the $20,000.00 mortgage. There is, however, nothing in the record to show that Connolly had agreed to give the additional note or that the subject of an additional note had been mentioned to him at this time.

On January 14, 1956, plaintiff's attorney wrote to Connolly: "I have the papers back from Harold (the plaintiff) so we are in a position to carry out the settlement agreement we talked about."

According to the record the most recent conversation between Connolly and plaintiff's attorney, prior to the writing of this letter, was the conversation of December 28, 1955, and that conversation was about settlement in full for $15,000.00.

On January 31, 1956, plaintiff's attorney wrote Connolly: "Regretfully we are getting to the point where you will have to take some action in Harold's matter to protect his interests. We agreed to your proposition, but it doesn't seem that it can be worked out."

On its face this letter is a notification of the acceptance of Connolly's proposal to settle the debt in full for $15,000.00 cash by both the attorney and his client, as that was the last proposal which Connolly had made.

Connolly thereafter continued negotiations with the Equitable Life Insurance Company and with other creditors with whom he was also seeking compromises. Shortly prior to March 1, he completed negotiations with Equitable, his new loan was approved and he executed the notes and mortgages which increased a prior loan from $60,000.00 to $90,000.00 and increased his interest rate from 4½% per annum to 5½% per annum.

Sometime after these negotiations had been completed and between the 3rd and 10th of March 1956, plaintiff's attorney, for the first time informed Connolly that he would be expected to give a note for $5,000.00 in addition to the $15,000.00 cash. At that time Connolly told plaintiff's attorney that "he better take the $15,000.00." At no time did Connolly positively refuse to give the note, but he did not agree to give it, and a refusal is to be inferred from what he did say.

On April 18, May 29, and June 13, 1956, plaintiff's attorney wrote Connolly letters asking him to come to his office and execute a $5,000.00 note. Connolly ignored these letters.

On June 21, 1956, plaintiff's attorney wrote Connolly, telling him that unless the $5,000.00 note was given, plaintiff would retain the $20,000.00 note and credit the payment of $15,000.00 on the indebtedness and that if Connolly was not satisfied with this arrangement he should notify the attorneys for Equitable not to pay the $15,000.00 and return the satisfaction of the mortgage to plaintiff.

The above letter, however, was written eight days after plaintiff's attorney had authorized the recording of the satisfaction and had asked payment of the $15,000.00. In fact the $15,000.00 was mailed to him the same day this letter was written and plaintiff's attorney mailed the remittance to his client the following day, or before

Connolly had time to act on the letter of June 21.

All of the negotiations for the compromise of the defendants' indebtedness to the plaintiff were conducted by plaintiff's attorney. Plaintiff and defendants never talked to each other, wrote to each other or even saw each other during the course of the negotiations. Plaintiff's attorney did not testify and this case has been submitted on motions which assume that no issue of fact exists in the case.

We assume, therefore, that defendant Connolly made an offer of settlement in accordance with a suggestion of plaintiff's attorney; that plaintiff's attorney told Connolly that the offer would have to be presented to his client and that thereafter by letter plaintiff's attorney informed Connolly that they "had agreed to your proposition." Connolly proceeded with his negotiations with the Equitable Life Insurance Company upon the assumption that defendant had agreed to the compromise. Upon this basis, he executed the new note and mortgage for $90,000.00. Although thereafter he was asked to give plaintiff a new note for $5,000.00 in addition to the $15,000.00 cash payment, Connolly never agreed to give this new note.

On the other hand we must also assume that plaintiff was informed by his attorney that Connolly had agreed to give the additional $5,000.00 note and that his agreement to satisfy his mortgage and thus surrender what security he had was made upon this basis.

The first issue in the case arises upon defendants' claim that there was a binding agreement to settle their indebtedness to plaintiff for $15,000.00 cash. The record shows an agreement to that effect between Connolly and plaintiff's attorney. The record also shows that plaintiff's attorney had no express authority to compromise his client's claim.

■ Ordinarily, in the absence of express authority, an attorney has no power to compromise his client's claims. 7 C.J.S. Attorney and Client § 105, p. 928; Business Service Collection Bureau v. Yegen, 67 N.D. 51, 269 N.W. 46; Albert v. Edgewater Beach Bldg. Corporation, 218 Minn. 20, 15 N.W.2d 460; Wells v. United Savings Bank of Tecumsch, 286 Mich. 619, 282 N.W. 844.

■ In this case the attorney's express instructions from his client were to settle for $15,000.00 cash and a $5,000.00 note. We are agreed that plaintiff's attorney was without authority to enter into the agreement which Connolly claims he made with him. We have therefore a situation where plaintiff understood that the agreement of settlement was one thing and defendant, Jim Connolly, understood it to be another. Clearly, there was no meeting of the minds, in so far as the parties were concerned. There was therefore no contract. Thus, defendants paid plaintiff $15,000.00 and plaintiff delivered to defendants a satisfaction of their mortgage without an agreement as to what the effect of the transaction should be, although both the defendant, Jim Connolly, and the plaintiff acted with the mistaken belief that there was a contract.

■ "Presumptively the release or satisfaction of a mortgage extinguishes the debt which it was given to secure, and therefore also puts an end to any remedies or proceedings by the mortgagee to recover the debt." 59 C.J.S. Mortgages § 475a, p. 750. This presumption is not conclusive and in this case it is rebutted by the conclusive evidence that plaintiff did not intend to satisfy the debt in full when he executed the release of the mortgage.

■■ This brings us to a consideration of the final point raised by appellant. This is the claim that plaintiff's cause of action is barred by the statutes of this State limiting deficiency judgments upon foreclosures of real property mortgages and suits upon any indebtedness secured by real property mortgages.

In so far as it is applicable here, Section 32–19–07 NDCC provides:

" *   *   * Except as otherwise provided in sections 32–19–04 and 32–19–06, neither before nor after the rendition of a judgment for the foreclosure of a real estate mortgage or for the cancellation or foreclosure of a land contract made after July 1, 1951, shall the mortgagee * * * be authorized or permitted to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage or contract so foreclosed. It is the intent of this section that no deficiency judgment shall be rendered upon any note, mortgage, * * * given after July 1, 1951, to secure the payment of money loaned upon real estate * * * *and in case of default the holder of a real estate mortgage * * * shall be entitled only to a foreclosure of the mortgage* * * * except as provided by sections 32–19–04 and 32–19–06."

Section 32–19–04 NDCC reads as follows:

"In an action for the foreclosure or satisfaction of a mortgage, the complaint shall state whether any proceedings have been had at law or otherwise for the recovery of the debt secured by such mortgage, or any part thereof, and if there have been, whether any and what part thereof has been collected. The plaintiff shall also state in his complaint whether he will in a later and separate action demand judgment for any deficiency which may remain due to him after sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage."

The foregoing section relates to the pleadings in actions to foreclose real estate mortgages. It requires that, if the mortgagee anticipates that the mortgage security may not be sufficient to pay the secured debt, he shall, in the foreclosure complaint state his intention to commence a separate action for any deficiency that may remain after the sale of the mortgaged property.

Section 32–19–06 NDCC reads as follows:

"In any action for the foreclosure of a real estate mortgage or the cancellation or the foreclosure of a land contract, the court shall have the power to render judgment for the amount found to be due at the time of the rendition of said judgment, and the costs of the action, and to order and decree a sale of the premises in such mortgage or contract described, or such part thereof as may be sufficient to pay the amount adjudged to be due and the costs of the action. The court shall have power to order and compel delivery of the possession of the premises to the purchaser at such sale, but in no case shall the possession of the premises so sold be delivered until after the expiration of one year from such sale, and the court shall direct, and the judgment shall provide, that during such one year period the debtor or owner of the premises shall be entitled to the possession, rents, use, and benefit of the real property sold. The court under no circumstances shall have power to render a deficiency judgment for any sum whatever against the mortgagor or purchaser, or the successor in interest of either, except as hereinafter provided. Where a note or other obligation and a mortgage upon real property have been given to secure a debt contracted subsequent to July 1, 1951, and the sale of the mortgaged premises has failed to satisfy in full the sum adjudged to be due and the costs of the action, the plaintiff may, in a separate action, ask for a deficiency judgment, if he has so indicated in his complaint, against the party or parties personally liable for that part of the debt and costs of the action remaining unsatisfied after the sale of the mortgaged premises. Such separate action for a deficiency judgment must be brought within ninety days after the sale of the

mortgaged premises. The court, in such separate action, may render a deficiency judgment against the party or parties personally liable, but such deficiency judgment shall not be in excess of the amount by which the sum adjudged to be due and the costs of the action exceed the fair value of the mortgaged premises. In case the mortgaged premises sell for less than the amount due and to become due on the mortgaged debt and costs of sale, there shall be no presumption that such premises sold for their fair value. In all actions brought for a deficiency judgment and before any judgment can be rendered therein, the determination of the fair value of the mortgaged premises shall first be submitted to a jury at a regular term or to a jury impaneled for that purpose, and no deficiency judgment can be rendered against the party or parties personally liable unless the fair value of the mortgaged premises is determined by such jury to be less than the sum adjudged to be due and the costs of the action. Fifteen days' notice of the time and place when or where such fair value of the mortgaged premises shall be so determined shall, in all cases, be given, as the court may direct, to the party or parties against whom personal judgment is sought. At such time and place such party or parties may offer evidence to show the fair value of the mortgaged premises even though they may not have otherwise appeared in the action for a deficiency judgment. Any deficiency judgment so obtained shall be enforced by execution as provided by law, except that no execution shall be enforced after three years from the date of the rendition of such deficiency judgment. The mortgagee or vendor or the successor in interest of either shall not be permitted or authorized either before or after the rendition of a judgment for the foreclosure of a real estate mortgage or the cancellation or the foreclosure of a land contract, if such mortgage or contract was made after July 1, 1951, to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage or contract so foreclosed or canceled in excess of the amount by which such debt and the costs of the action exceed the fair value of the mortgaged premises. Such fair value shall be determined by a jury in the same manner as the fair value is determined in cases where a deficiency judgment is sought in an action to foreclose the mortgage and such judgment shall be enforced by execution as provided by law except that no such execution shall be enforced after three years after the date of the rendition of such judgment."

This section sets forth the procedure to be followed in actions for a deficiency judgments and actions subsequent to foreclosure. Sections 32–19–04 and 32–19–06, supra, permit separate actions for deficiencies, and actions after foreclosure in the case of mortgages executed subsequent to July 1, 1951. They do not authorize actions upon a debt secured by a real property mortgage only, without resort to foreclosure. Since all actions upon the debt, or any part thereof, except as authorized by the foregoing sections, are barred, it follows that a mortgagee may not bring an action upon the secured debt, against the mortgagor, without resort to foreclosure. Thus where, as in this case, the mortgagee, satisfies his mortgage, without an agreement with the mortgagor as to what the effect of the satisfaction shall be, the mortgagee may not thereafter bring an action against the mortgagor for any part of the debt.

It follows that the judgment of the district court must be reversed.

MORRIS, C. J., and TEIGEN, STRUTZ and ERICKSTAD, JJ., concur.