Robert SKALBECK, et al., Appellants,

v.

AGRISTOR LEASING, Minnesota Harvestore, Inc., A.O. Smith Harvestore Products, Inc., et al., Respondents.

No. C8–85–2033.

Court of Appeals of Minnesota.

March 25, 1986.

Boyd A. Beccue, Willmar, for Robert Skalbeck, et al.

William D. Hull, Minneapolis, for Agristor Leasing.

John H. Faricy, Jr., Minneapolis, for Minnesota Harvestore, Inc.

William M. Hart, Gary W. Hoch, Minneapolis, for A.O. Smith Harvestore Products, Inc., et al.

Heard, considered, and decided by CRIPPEN, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

WOZNIAK, Judge.

Robert and Joan Skalbeck appeal from an order to enforce a settlement agreement. The Skalbecks contend the trial court erred in concluding a settlement was authorized and accepted. We affirm.

## FACTS

In January of 1980, the Skalbecks purchased a silo and unloader from respondent Minnesota Harvestore, Inc. The transaction was financed through a lease agreement with respondent Agristor Leasing. The equipment was originally manufactured by respondent A.O. Smith Harvestore Products, Inc.

When the Skalbecks experienced difficulty in unloading silage to feed their livestock, they stopped making lease payments. Agristor brought an action on the lease in federal court. The Skalbecks filed a counterclaim and third-party complaints against the other respondents alleging misrepresentation, negligence, and breach of warranty.

The Skalbecks then filed this action, also on the grounds of misrepresentation, breach of warranty, and negligence. The parties conducted discovery and discussed settlement of the lawsuit. The Skalbecks were at that time represented by attorney Frank Brixius. On April 3, 1984, Brixius sent a letter to counsel for respondents:

Following our multiple telephone conversations between the parties concerning the settlement of this claim, I met with Bob Skalbeck in my office this morning.

After we discussed all options at length, including the possibility of his asserting a claim for damages through the Ron Schneider group and using the Colorado experts, Bob authorized me to settle his case as against all parties upon either of the following bases:

1. The Defendants can take back all their equipment and keep the cash that Bob has paid them and that's it (which is what Bob would prefer because of all the expense and aggravation that this thing has caused him); or

2. The Defendants install the larger Atlas Unloader so that he has a system that will work, and Bob will then resume the scheduled payments due Agristor under the lease.

With respect to the latter settlement alternative, Bob would not be willing to pay any interest or penalties to Agristor for the non-payment period. It is Bob's feeling that he has lost many thousands of dollars more during this period of time than any interest loss incurred by Agristor.

If settlement is acceptable on either of these bases, I suggest that we wrap it up now so that we can save our clients hundreds of dollars apiece by not attending the pre-trial in Olivia on Monday, April 9.

A settlement was not reached before the pretrial hearing, and trial was set for November 13, 1984. On November 9, 1984, William Hull, attorney for respondent Agristor Leasing, sent the following letter to all counsel:

Please find enclosed a Settlement and Release Agreement in the above-referenced matter. Please review the enclosed Agreement and give me a call with any questions or comments you have.

Frank [Brixius], if the Agreement meets with your approval, I would ask that you call the Court and cancel the trial date which is set for the 13th of November, 1984.

Brixius cancelled the trial date and sent respondents' counsel a second letter on November 13, 1984:

I have reviewed the copy of the Settlement and Release Agreement forwarded in your letter dated November 9, 1984. That agreement, together with the separate agreement with Mr. Hoch appear to be satisfactory in form.

I am assuming that the documents you referred to in paragraph 8 of your agreement will be consistent with the original documents.

Brixius sent a third letter on January 4, 1985:

In response to the copy of your January 3, 1985 letter addressed to Bill Hull that I received, I reviewed my file to ascertain the status of the settlement papers.

The last correspondence I have had in this file is my letter dated November 13, 1984, addressed to Bill Hull. Copies of that correspondence were forwarded to you and Jon Parrington. As I indicated therein, the proposed copy of the settlement and the release agreement forwarded for my review by Bill met with my approval, assuming that the documents he referred to in paragraph nine were consistent with the original documents. It is my understanding that once the new equipment is installed and operating as agreed upon, the settlement agreements will be forwarded to me for execution by the plaintiffs.

On April 5, 1985, attorney Hull forwarded the settlement papers to Brixius; at that time the agreement had been signed by respondents and their counsel. In an affidavit, Hull stated that he spoke with Brixius "several weeks later" and asked him why the documents had not yet been returned. Brixius told Hull the Skalbecks had not responded to his letters or calls.

The Skalbecks substituted their present counsel for attorney Brixius on June 24, 1985. On August 14, 1985, respondents brought a motion to enforce the settlement.

In an affidavit filed in opposition to the motion, Robert Skalbeck stated he received a copy of the settlement agreement in late 1984 "or possibly in January of 1985." He

said he called Brixius and "informed him that the terms of the agreement were unacceptable in their present form." Skalbeck also alleged he received a call from a person who "identified himself as being from the defendant Agristor Leasing" and that he told the caller "the terms of the agreement were unacceptable."

After a hearing, the Renville County District Court ordered that the settlement agreement "shall be enforced in all respects." A memorandum followed the order:

> Mr. Skalbeck now maintains that he never signed the settlement agreement and therefore the settlement is unenforceable. However, M.S. 481.08 states:
>
> > "An attorney may bind his client, at any stage of an action or proceeding, by agreement made in open court or in the presence of the clerk, and entered in the minutes by such clerk, or made in writing and signed by such attorney."
>
> Settlement agreements are presumed to be valid in Minnesota. *Eggleston v. Keller [Drug Co.,* 265 Minn. 78] 120 N.W.2d 305 (Minn.1963). Plaintiffs have not presented to the court sufficient evidence to overcome that presumption.
>
> Since M.S. 481.08 gives an attorney the authority to bind his client in a settlement agreement, the motion to enforce the settlement must therefore be granted.

### ISSUES

Did the trial court err in concluding the settlement agreement was enforceable?

### ANALYSIS

*Standard of Review*

It is well settled that:

> when the trial court upon a motion passes upon fact questions, either upon oral or written evidence, its determination will not be reversed unless the same is palpably contrary to the evidence. In this connection it has been held that the trial court is better able than this court to determine the value of affidavits of attorneys.

*Albert v. Edgewater Beach Building Corp.,* 218 Minn. 20, 25, 15 N.W.2d 460, 463 (1944).

Here the trial court made no express findings of fact in granting respondents' motion to enforce the settlement. Such findings are not necessary on decisions of motions. Minn.R.Civ.P. 52.01. The court instead included a memorandum with its order. A recent change in Minnesota procedure allows a court to make findings informally in an "accompanying memorandum." *Id.* and Advisory Committee Note.

■ In *Rosenberg v. Townsend, Rosenberg & Young, Inc.,* 376 N.W.2d 434 (Minn. Ct.App.1985), this court was confronted with an absence of findings on substantially similar issues. Our review in *Rosenberg* involved an examination of the record and possible bases for the trial court's decision.

> Because the trial court did not issue any findings of fact, it cannot be determined upon which basis it rendered its decision. Several theories were presented to the trial court and have been raised in this appeal. We find that the trial court could properly have affirmed the settlement agreement upon any of three separate grounds.

376 N.W.2d at 436 (footnote omitted); *see also Eggleston v. Keller Drug Co.,* 265 Minn. 78, 120 N.W.2d 305 (1963) (issue of whether there was "any reasonable basis in the record" to support trial court's order). We will use the same approach here.

*Authority*

■ Whether an attorney has been given express authority to settle a claim is a question of fact to be resolved by the trial court. *Rosenberg,* 376 N.W.2d at 438; *see Anderson v. Blair,* 358 N.W.2d 708, 711 (Minn.Ct.App.1984).

Here the trial court relied on Minn.Stat. § 481.08 (1984), which provides in part that:

> An attorney may bind his client, at any stage of an action or proceeding, by agreement * * * made in writing and signed by such attorney.

■ The statute does not allow counsel to settle a client's cause of action without

authority from the client. *Albert*, 218 Minn. at 25, 15 N.W.2d at 463; *see Rosenberg*, 376 N.W.2d at 437. The judge's statement that section 481.08 "gives an attorney the authority to bind his client in a settlement agreement," standing by itself, would appear to be an inadvertent misstatement of the law. However, he had already determined the client had given authority to settle.

The trial court did not ignore the issue of authority; a more reasonable inference from the court's memorandum is that the court found the Skalbecks had authorized Brixius to settle. Indeed, respondent A.O. Smith's memorandum, submitted to the trial court in support of the motion to enforce the settlement agreement, raised and discussed this issue.

What we must determine is whether there was sufficient evidence for the trial court to have found Brixius was authorized to settle.

■ We agree with respondents that Brixius' letters and conduct are such evidence. His April 3, 1984 letter includes the statement that "Bob authorized me to settle his case." The attorneys then negotiated the specific terms of settlement and counsel for respondents drafted a proposal. In his November 13, 1984 letter, Brixius says the agreement and release "appear to be satisfactory in form." Brixius then cancelled the trial date. The January 4, 1985 letter reiterates Brixius' prior approval of the settlement.

There is no evidence the Skalbecks have *ever* alleged they did not give Brixius authority to settle. The conduct of the parties and the documentary evidence show the contrary. The record would support a finding that the Skalbecks authorized Brixius to settle their claims.

*Offer and Acceptance*

■ Even if Brixius had authority to settle, the court also had to determine that an agreement was actually reached.

A compromise settlement of a lawsuit is contractual in nature. Therefore, to be valid and binding it requires a definite offer and acceptance.

*Speckel v. Perkins*, 364 N.W.2d 890, 893 (Minn.Ct.App.1985) (citation omitted). A manifestation of assent need not be written, since section 481.08 "is not a condition to the validity of an otherwise provable agreement made by an attorney with the authorization of his client." *Ghostley v. Hetland*, 295 Minn. 376, 378, 204 N.W.2d 821, 823 (1973); *see also Rosenberg*, 376 N.W.2d at 435.

The issue is whether there was sufficient evidence for the trial court to have found that Brixius or the Skalbecks either expressly or impliedly agreed to the settlement. Appellants assert a tentative settlement was reached, then later abandoned. We disagree.

■ The written settlement agreement sent to Brixius was an offer, which Brixius accepted in his letter of November 13, 1984. The January 4, 1985 letter also states that Brixius approved the settlement. Brixius cancelled the trial date, which the court might have found to be a further manifestation of agreement.

*Implied Acceptance*

The trial court might also have concluded the Skalbecks themselves impliedly agreed to the settlement because they did not promptly reject it.

■ A client may be bound by a settlement if the client either impliedly or expressly ratifies the agreement. *Rosenberg*, 376 N.W.2d at 437 (citing *Gran v. City of St. Paul*, 274 Minn. 220, 223, 143 N.W.2d 246, 249 (1966)). Conduct, as well as verbal expression, may at times constitute acceptance, and silence may be acceptance where there is a duty otherwise to deny. *Id.* (citing *Holt v. Swenson*, 252 Minn. 510, 516, 90 N.W.2d 724, 728 (1958)).

■ In *Rosenberg*, this court held that either "implied acceptance" or "equitable estoppel" would support enforcement of a settlement agreement. *Id.* at 437–38.

In his affidavit, Robert Skalbeck admits receiving the settlement papers in late 1984 or January of 1985. The Skalbecks did not substitute new counsel until late June of

1985. While Skalbeck maintains he talked with both Brixius and a person associated with respondent Agristor Leasing in the interim, there is no other evidence to corroborate this claim. The probative value of Skalbeck's affidavit was a matter for the trial court. *Albert*, 218 Minn. at 25, 15 N.W.2d at 463.

For a period of approximately six months, the Skalbecks did not affirmatively contact respondents or their attorney to dispute the settlement. The trial court could have concluded from this delay that the Skalbecks did accept the settlement, then later simply changed their minds.

### DECISION

The record supports a finding that appellants authorized their attorney to settle their claims and that either the attorney accepted the settlement or appellants impliedly accepted it. The trial court properly determined the settlement agreement was enforceable.

Affirmed.