**Michael L. JOHNSON, Appellant,**

v.

**Eugene V. SITZMANN and Faye Sitzmann, Respondents.**

No. C3–87–937.

Court of Appeals of Minnesota.

Oct. 13, 1987.

Review Denied Dec. 22, 1987.

Frederick W. Morris, Best & Flanagan, Minneapolis, for appellant.

John E. Daubney, St. Paul, for respondents.

Heard, considered and decided by POPOVICH, C.J., NORTON and LOMMEN *, JJ.

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## OPINION

POPOVICH, Chief Judge.

This appeal is from an amended order dated December 3, 1986, which (1) granted respondents' motion for summary judgment on the issue of settlement and compromise of appellant's claims under the Minnesota Human Rights Act, and (2) deferred resolution of appellant's claim of unauthorized withholding from wages until further order of the court, and from a judgment holding respondents violated Minn.Stat. § 181.79, subd. 1 by withholding the amount of $175 from appellant's paycheck for rent due without appropriate written authorization. We affirm.

## FACTS

Faye Sitzmann is the record owner of an apartment building located at 1280–1305 Grand Avenue in St. Paul, Minnesota. She and her husband were employers of Michael Johnson (appellant), who resided in one of the apartments from December 15, 1982 until January 16, 1984.

Appellant, hired as caretaker and rental manager, was paid an hourly wage of $5.50 and required to live on the premises. Respondents provided appellant an apartment at the rate of $200 per month, which normally rented for $350 per month.

In June 1983, appellant's fiancee, Teresa Scalzo, moved into the apartment to live with appellant. Respondents, later aware of Ms. Scalzo's presence in appellant's apartment, warned appellant.

Appellant was customarily paid by respondents bimonthly for hours worked. From the gross wages due appellant, respondents would deduct rent owed for tenancy.

Respondents required non-employee tenants to pay rent in advance at the beginning of each month. Appellant's rent was withheld by respondents bi-monthly rather than in advance.

For the term of appellant's employment, from December 1982 through January 16,

1984, respondents withheld rent at the rate of $200 per month from appellant's compensation.

There was no written authorization permitting respondents to withhold any amounts of rent from Johnson's compensation.

Respondents terminated appellant's employment on January 16, 1984. At that time, respondents advised appellant his rent would be $350 per month, effective immediately.

On January 17, 1984, respondents paid appellant his final wages for the work period of January 1–16, 1984. Gross wages due were $426, but respondents deducted $100 for the rental period covering January 1–15, 1984, and $175 for the rental period covering January 16–31, 1984. Appellant objected to respondents' deduction of $175 and never authorized respondents to make the deductions.

At a Department of Economic Security hearing, respondents said they discharged appellant "because [they] just didn't condone the fact that an employee on the premises to be living with an unmarried girl in the apartment."

Among the findings of fact of the Department of Economic Security were:

In November of 1983, the employer [Sitzmann] discovered that [Johnson] was living with a woman to whom he was not married in the apartment furnished [Johnson] by the employer. The employer indicated to [Johnson] that he disapproved of this practice and that [Johnson] would get into trouble if he continued.... In December of 1983, the employer once again warned [Appellant] that he did not approve of having another individual living with [Appellant] under the above mentioned circumstance.... On January 14, 1984, the employer told [Appellant] that he must get the woman out of the apartment that was furnished him by the employer or he would be discharged. On Monday, January 16, 1984, the employer visited with [Johnson]. The woman continued to reside in the same apartment. Thereupon, the employer discharged [Johnson].

On June 7, 1984, appellant filed a charge of discrimination against respondents with the Minnesota Department of Human Rights. Appellant alleged respondents terminated his employment without prior notice or warning and did so because of his living arrangements. Appellant specifically alleged respondents discriminated his employment on the basis of his marital status, in violation of Minn.Stat. § 363.03, subd. 1(2)(b) & (c) (1986).

After investigating, the Department of Human Rights on September 7, 1984 determined that probable cause existed to credit the allegation of discrimination. The Department found marital status was a consideration in appellant's termination.

When respondents discharged appellant, they gave appellant two weeks' notice to vacate the apartment no later than January 30, 1984. Although appellant was not an employee of respondents the last two weeks of January 1984, respondents nevertheless withheld the increased rental amount.

Subsequently the matter was referred to the Attorney General's Office for conciliation. On or about February 4, 1985, appellant verbally accepted a settlement offer of $1,360 from Deborah Kohler, a special assistant attorney general assigned to the case. A written settlement agreement was prepared by her, signed by respondents, then signed by Kohler, and forwarded to appellant for his signature.

Upon receiving the settlement documents and check, appellant consulted counsel for the first time and decided not to execute the agreement. Appellant then initiated a private civil action pursuant to Minn.Stat. § 363.14, subd. 1(b)(3).

The December 3, 1986 order for summary judgment was entered in favor of respondents in regard to the issue of settlement and compromise of appellant's claim under the Human Rights Act. On March 11, 1987, the court concluded appellant was entitled to $350, or double the amount withheld for the last two weeks of appellant's occupancy, pursuant to Minn.Stat. § 181.-79. This appeal followed.

## ISSUES

1. Did the trial court err in determining no genuine issues of material fact existed regarding appellant's settlement agreement with the Department of Human Rights?

2. Did the trial court err in awarding appellant only a portion of the amount withheld from appellant?

## ANALYSIS

1. Appellant argues his oral assent to respondents' settlement offer does not bar the present suit, citing Minn.Stat. § 363.14, subd. 1 (1986). Appellant claims the statute supersedes any law to the contrary and cites the statutory policy "[i]t is the public policy of this State to secure for persons in this State, freedom from discrimination." Minn.Stat. § 363.12, subd. 1 (1986).

Appellant claims (1) public policy is served by interpreting the statute to mean appellant may pursue a civil action unless he was a signator to a conciliation agreement, (2) he would only be disabled from pursuing a civil action if he were a signator to a conciliation agreement, and (3) summary judgment was improper because the Human Rights Act precludes it.

■ The trial court found no issue of fact existed whether there was a binding settlement. It is not disputed appellant orally agreed to the settlement. The Department and respondents signed the agreement and it was sent to appellant for his signature with a check drafted by respondents in the amount of $1,360.00 as payment for the settlement. Appellant argues because he did not sign the agreement, therefore he is not barred from bringing this suit. We disagree.

Minn.R. 5000.0800 (1987) provides in part:

**Subp. 3. Settlement agreements.** The commissioner and a respondent may at any time enter into an agreement or stipulation to conciliate, settle, or compromise the subject matter of a charge or a complaint. The agreement or stipulation may provide for the commissioner to waive the right to proceed against the respondent under the act and for the respondent to take such affirmative actions as may effectuate the purpose of the act. The affirmative actions may include, but are not limited to, the payment of money damages, the hiring, reinstatement, or upgrading of an aggrieved person, or the sale or lease of real property. *Any agreement entered into by the commissioner and the respondent shall be reduced to writing and is enforceable in the same manner as a final decision of the department.* An administrative law judge may issue an order embodying the terms of any agreement or stipulation entered into by the commissioner and a respondent. The order is enforceable as a final decision of the department.

*Id.* (emphasis added). We find there was an agreement to settle the dispute without appellant signing the agreement. The language of subpart 3 contemplates an agreement precedes the requirement of a writing.

■ Furthermore, after a finding of probable cause by the Department of Human Rights, the Department represents the complaining party's interests during settlement negotiations. Minn.Stat. § 481.08 (1986) provides an attorney may bind his client at any stage of an action or proceeding, and does not require a settlement made by an attorney, with the approval of his client, to be in writing. *See Skalbeck v. Agristor Leasing*, 384 N.W.2d 209, 213 (Minn.Ct.App.1986) (a client may be bound by a settlement if the client either impliedly or expressly ratifies the agreement); *Rosenberg v. Townsend*, 376 N.W.2d 434, 437 (Minn.Ct.App.1985). In *Ghostley v. Hetland*, 295 Minn. 376, 378, 204 N.W.2d 821, 823 (1973), the supreme court upheld a settlement pursuant to a telephone conversation between the attorneys.

In *Skalbeck*, the court held a settlement agreement is enforceable where the claimant orally authorized his attorney to settle the claim. The court stated, "[a] manifestation of assent need not be written, since section 481.08 is not a condition to the validity of an otherwise provable agree-

ment made by an attorney with the authorization of his client." *Skalbeck*, 384 N.W.2d at 213. The court of appeals has previously stated that settlement of disputes without litigation is highly favored; such agreements will not be lightly set aside by the courts. *Wilson's, Inc. v. Twin City Freight, Inc.*, 378 N.W.2d 117, 119 (Minn.Ct.App.1985).

■ We also find the principles of equitable estoppel apply. Estoppel is an equitable doctrine addressed to the discretion of the court, whose decision turns on facts of the case at bar. *Johnson v. St. Paul Insurance Co.*, 305 N.W.2d 571, 573 (Minn. 1981) (citing *Schmidt v. Smith*, 299 Minn. 103, 216 N.W.2d 669 (Minn.1974)). For equitable estoppel to apply, the party must demonstrate inducement through language or conduct to rely in good faith on the language or conduct resulting in injury, detriment or prejudice. *Beaty v. Minnesota Board of Teaching*, 354 N.W.2d 466, 470 (Minn.Ct.App.1984). We find appellant is estopped from asserting he did not enter into a settlement agreement with respondents. The Department of Human Rights attorney represented appellant's interests and therefore could bind him to a settlement agreement. We agree that the trial court properly found appellant accepted the settlement offer.

2. Appellant claims the trial court erred in awarding him only a portion, rather than the total, of the amounts withheld from his paychecks. Minn.Stat. § 181.79, subd. 1 states in pertinent part:

No employer shall make any deduction, directly or indirectly, from the wages due or earned by any employee * * * to recover any other claimed indebtedness running from employee to employer, unless the employee, after the loss has occurred or the claimed indebtedness has arisen, voluntarily authorizes the employer in writing to make the deduction or unless the employee is held liable in a court of competent jurisdiction for the loss or indebtedness. * * * Any authorization for a deduction shall set forth the amount to be deducted from the employee's wages during each pay period.

\* \* \* \* \* \*

Any agreement entered into between an employer and an employee contrary to this section shall be void.

*Id.*

Appellant cites *Kahnke Brothers, Inc. v. Darnall*, 346 N.W.2d 194 (Minn.Ct.App. 1984), where the court concluded a statement signed by an employee which stated in pertinent part, "I, the below signed, understand that the dollar amount or hour amounts stated above will be taken out of my paycheck," failed to conform with the statute. The reasoning was that the employee merely verified the knowledge of the employer's actions; it did not by its terms authorize the reduction in pay. *Kahnke*, 346 N.W.2d at 196.

There being no written authorization to withhold any amounts from appellant's checks, appellant claims pursuant to Minn. Stat. § 181.79, subd. 2 respondents are liable for twice all amounts withheld. Appellant asserts $2684 was withheld for rent and telephone service and he should receive double, or $5368, as damages. We disagree.

■ The deductions from appellant's wages are not governed by Minn.Stat. § 181.79, subd. 1. Appellant was aware the entire time he was employed there was an agreement the rent would be withheld bi-weekly from his paycheck. Appellant never objected to this arrangement until he commenced the discriminatory action. The deductions were agreed to as part of his employment contract. We find that Minn. Stat. § 181.79 does not apply to those deductions under appellant's employment contract where appellant consented.

■ We agree with the trial court, however, the rent deduction for the last two weeks of January 1984 was in violation of Minn.Stat. § 181.79, subd. 1. Respondents wrongfully withheld those amounts after appellant was terminated from his employment. Respondents are liable for twice the amount withheld, or $350.00.

## DECISION

The trial court properly found no material issue of fact existed and the parties entered a valid, enforceable settlement agreement. The trial court did not err in concluding respondents were liable to appellant for twice the amount unlawfully withheld for the final two weeks' rent.

Affirmed.