# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0884

Brian Rhodes, et al.,
Appellants,

vs.

Stockwell Homes, L.L.C., et al.,
Respondents.

**Filed March 4, 2024**
**Reversed and remanded**
**Frisch, Judge**

Hennepin County District Court
File No. 27-CV-22-4312

Robert J. Shainess, Monica L. Davies, Capstone Law, LLC, Edina, Minnesota (for appellants)

Christopher R. Jones, Brian N. Niemczyk, Hellmuth & Johnson PLLC, Edina, Minnesota (for respondents)

Considered and decided by Worke, Presiding Judge; Frisch, Judge; and Smith, John, Judge.[*]

## SYLLABUS

A party's authorized attorney may sign a "mediated settlement agreement" under Minn. Stat. § 572.33, subd. 4 (2022), on behalf of that party.

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**OPINION**

**FRISCH**, Judge

Appellants challenge the district court's order enforcing a settlement agreement reached as part of mediation proceedings. Because the district court properly concluded that a party may authorize their counsel to sign a mediated settlement agreement but erroneously concluded that the record established as a matter of law the existence of an enforceable, signed mediated settlement agreement, we reverse and remand.

**FACTS**

Appellants Brian and Briana Rhodes commenced this action against respondents Stockwell Homes L.L.C. and Jennifer Stockwell (together referenced as Stockwell) following a failed residential remodeling project. The Rhodeses alleged that they engaged Stockwell for a design contract and a subsequent remodeling contract. After the Rhodeses paid Stockwell a deposit representing 20% of the estimated project cost under the remodeling contract, Stockwell informed the Rhodeses that the project would cost much more than previously estimated. The Rhodeses declined to sign another remodeling contract with the new project cost. Stockwell refused to manage the project and refused to return the Rhodeses' deposit.

The Rhodeses alleged two counts of breach of contract and one count each of unjust enrichment, promissory estoppel, conversion, and civil theft against Stockwell Homes, and one count each of negligent misrepresentation and fraudulent inducement against Stockwell Homes and Jennifer Stockwell. The Rhodeses sought damages against

Stockwell Homes in excess of $172,575.69 and against Jennifer Stockwell in excess of $50,000. The matter proceeded to mediation.

On November 16, 2022, Stockwell and Brian Rhodes attended mediation with their respective counsel but did not reach an agreement. On November 17, the mediator emailed a "mediator's proposal" to counsel for both parties, requesting a confidential response to two options—"OPTION A" and "OPTION B"—by 9:00 a.m. on November 19. The mediator explained that upon receipt of "matching CONFIDENTIAL YES answers to OPTION A, that will be the DEAL." On November 19, the mediator emailed counsel for both parties, "My congrats . . . . We have an OPTION A DEAL. Terms below. [The Rhodeses' counsel] mentioned one clarification that is both standard and fair. If the Settlement Payment is not timely made, the muzzles come off. No arguments on this one." The mediator anticipated "a draft agreement early next week." The following day, the Rhodeses' counsel emailed the mediator and Stockwell's counsel stating, "I regrettably write to let you know that we do not have an agreement. After careful consideration, my clients are unwilling to accept the terms."

The Rhodeses moved for partial summary judgment on one of their breach-of-contract claims. Stockwell separately moved to enforce the settlement agreement or, in the alternative, for summary judgment on the Rhodeses' unjust-enrichment, promissory-estoppel, conversion, civil-theft, negligent-misrepresentation, and fraudulent-inducement claims, and to dismiss Jennifer Stockwell as a defendant. Stockwell argued that a binding settlement agreement was formed when the Rhodeses' counsel emailed the mediator that the Rhodeses agreed to the mediator's proposed settlement terms.

The Rhodeses opposed the motion to enforce the settlement agreement and Stockwell's motion for summary judgment.

Following a hearing on the motions, Stockwell's counsel filed a declaration noting that the district court agreed to leave the record open "to allow the parties to submit more complete copies of the email communications between the mediator and parties' attorneys, setting forth the terms of the parties' settlement agreement."[1] The declaration provided that the parties agreed to submit the attached portion of the November 17 email from the mediator, which included nonconfidential details about each settlement option. The exhibits to the declaration do not include, and the record does not otherwise contain, an email from the Rhodeses' counsel to the mediator stating that the Rhodeses agreed to the mediator's proposed Option A.

The district court denied the Rhodeses' motion for summary judgment and granted Stockwell's motion to enforce the settlement agreement. The district court reasoned that counsel for the Rhodeses electronically signed a mediated settlement agreement on their behalf by responding to the mediator that they would agree to the mediator's proposed Option A. The district court ordered the parties to execute a settlement agreement consistent with Option A and dismissed the matter with prejudice.

The Rhodeses appeal the district court's order granting Stockwell's motion to enforce the settlement agreement.

---

[1] The record on appeal does not include a transcript of the hearing.

**ISSUES**

I.     Did the district court err by determining that a party's attorney may sign a mediated settlement agreement on that party's behalf?

II.    Did the district court err in determining that an enforceable, signed mediated settlement agreement existed as a matter of law?

**ANALYSIS**

The Rhodeses argue that the district court erred in enforcing the settlement agreement because (1) Minn. Stat. § 481.08 (2022), which permits an attorney to bind their client by agreement, does not apply to "mediated settlement agreements" made pursuant to the Minnesota Civil Mediation Act (MCMA), Minn. Stat. §§ 572.31-.40 (2022); (2) the record does not contain evidence of an agreement that the settlement agreement may be signed electronically, as required to apply the Minnesota Uniform Electronic Transactions Act (UETA), Minn. Stat. §§ 325L.01-.19 (2022); and (3) the record does not contain evidence that an attorney electronically signed a settlement agreement on behalf of the Rhodeses. We address each argument in turn.

**I.     A party's authorized attorney may sign a mediated settlement agreement on behalf of that party.**

The Rhodeses first question whether counsel for a party may sign a mediated settlement agreement on that party's behalf. The Rhodeses argue that only a party, and not counsel authorized to sign on behalf of a party, may sign a mediated settlement agreement under the MCMA. Stockwell, on the other hand, argues that authorized counsel may sign a mediated settlement agreement on behalf of a party pursuant to Minn. Stat. § 481.08. We agree with Stockwell.

5

Although the MCMA itself is silent as to whether an authorized attorney may sign a mediated settlement agreement on behalf of a party, Minnesota law recognizes the ability of an authorized attorney to sign a settlement agreement on behalf of a party. Pursuant to Minn. Stat. § 481.08, "[a]n attorney may bind a client, at any stage of an action or proceeding . . . made in writing and signed by such attorney." And we have interpretated this language to mean that an attorney may settle a claim on behalf of their client if authorized to do so. *Skalbeck v. Agristor Leasing*, 384 N.W.2d 209, 212-13 (Minn. App. 1986) (reasoning that "[Minn. Stat. § 481.08 (1984)] does not allow counsel to settle a client's cause of action without authority from the client" but that the district court had sufficient evidence to conclude that appellants had authorized their counsel to settle). We see no principled basis why settlement agreements governed by the MCMA are excepted from this rule, particularly when section 481.08 expressly provides that an attorney may bind a client at "*any* stage" of an action.[2] (Emphasis added.)

Our conclusion is consistent with Minnesota law, including provisions in the MCMA incorporating the application of common-law contract principles in the consideration of mediated settlement agreements. *See* Minn. Stat. §§ 572.35, subd. 1 (providing that the "effect of a mediated settlement agreement shall be determined under

---

[2] We express no opinion as to whether a party must be personally informed of the conditions set forth in Minn. Stat. § 572.35, subd. 1, or must personally sign an agreement to mediate pursuant to Minn. Stat. § 572.33, subd. 3, as neither question is before the court. We note that the record contains an unsigned agreement to mediate—which under the MCMA is distinct from a mediated settlement agreement—that contains the disclosure of conditions as required under the MCMA. The parties do not dispute that they were informed of the required disclosures.

principles of law applicable to contract"), .36 (providing that a mediated settlement agreement may be set aside or reformed "if appropriate under the principles of law applicable to contracts"). Our conclusion is also consistent with well-settled public policy encouraging the settlement of claims. *See Voicestream Minneapolis, Inc. v. RPC Props., Inc.*, 743 N.W.2d 267, 271 (Minn. 2008) (stating that the "[s]ettlement of claims is encouraged as a matter of public policy").

We therefore hold that a party's authorized attorney may sign a "mediated settlement agreement" on behalf of that party. We discern no error in the district court's determination that counsel for the Rhodeses may sign a mediated settlement agreement if authorized to do so.[3]

## II. The district court erred in determining the existence of both an agreement to electronically sign a settlement agreement and a signed mediated settlement agreement.

The Rhodeses next challenge the district court's enforcement of a mediated settlement agreement between the parties based on purported electronic communications between their counsel and the mediator. They argue that application of the UETA requires evidence of an agreement to conduct business through electronic means, Minn. Stat. § 325L.05(b); that the UETA defines an electronic signature as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record," Minn. Stat. § 325L.02(h); and that the record does not contain evidence of an agreement to electronically sign a settlement agreement

---

[3] In reaching this conclusion, we express no opinion as to whether the Rhodeses authorized their counsel to agree to the mediator's proposal.

and does not contain evidence of an electronic signature on a settlement agreement. We agree.

We first address our standard of review. A party seeking to enforce a settlement agreement bears the burden of establishing the existence of a binding settlement agreement. *See Berndt v. Berndt*, 149 N.W. 287, 288 (Minn. 1914) (assigning burden to party seeking relief that would effectively result in a decree for specific performance of an alleged contract to convey real property to clearly prove the existence of the contract and that the terms of the contract were "so specific and distinct as to leave no reasonable doubt of their meaning" (quotation omitted)). The district court treated the motion to enforce the settlement agreement as a motion for summary judgment, which is consistent with the supreme court's directive in *Voicestream*. 743 N.W.2d at 273 ("[W]e hold that a district court shall treat a motion to enforce a settlement agreement as it would a motion for summary judgment, and explicitly grant or deny each claim."). And the parties do not dispute that our review of the district court's decision to enforce the settlement agreement is de novo. We therefore "review de novo whether a genuine issue of material fact exists." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn. 2002).

Whether the parties agreed to sign an agreement electronically and whether a purported electronic signature meets the definition of an electronic signature under the UETA are questions of fact. *See SN4, LLC v. Anchor Bank, fsb*, 848 N.W.2d 559, 566-69 (Minn. App. 2014) (analyzing whether a reasonable fact-finder could conclude that the parties agreed to use electronic signatures and whether a reasonable fact-finder could conclude that a party electronically signed the agreement), *rev. denied* (Minn. Sept. 16,

8

2014); *see also* Minn. Stat. § 325L.02(a) (defining agreement as "the bargain of the parties *in fact*" (emphasis added)). We therefore consider whether the facts in the record establish the existence of (1) an agreement to electronically sign a settlement agreement and (2) a signed mediated settlement agreement.[4]

The record does not contain evidence that the parties agreed to electronically sign a settlement agreement.[5] Minn. Stat. § 325L.05(b) (stating that the UETA "applies only to transactions between parties, each of which has agreed to conduct transactions by electronic means" and that "whether the parties agree to conduct transactions by electronic means is determined from the context and surrounding circumstances, including the

---

[4] The district court in its conclusions of law wrote that the Rhodeses "do not claim that a genuine issue of material fact exists as to whether a binding settlement agreement was created" and that the Rhodeses "have not raised any factual issues." But in their brief opposing the motion to enforce the settlement agreement, the Rhodeses asserted that "the parties *did not agree* that they could be bound by email exchanges between their attorneys and the mediator" and that "[n]one of the parties electronically signed the agreement" and therefore UETA did not apply. (Emphasis added.) While we acknowledge that the Rhodeses framed their argument as an issue of law, we conclude that these assertions amount to disputes as to the course of events giving rise to the purported agreement. And we cannot consider any possible concessions made at the hearing on the motions because the transcript for this hearing is not in the record on appeal. In addition, given the timing of events giving rise to the motion to enforce the settlement agreement, the parties did not conduct any discovery regarding the issues pertinent to the motion. The district court ultimately determined that there were no genuine issues of material fact regarding an agreement to sign the settlement agreement electronically and the existence and nature of an electronic signature. We therefore do not consider this argument forfeited. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that appellate courts generally address only those questions previously presented to and considered by the district court).

[5] The district court pointed out that the "vast majority of filings in the case have been electronically signed by counsel." The electronic filing of documents in the district court does not establish an intent to *sign the settlement agreement* electronically. *See SN4*, 848 N.W.2d at 568 (stating that the "record was devoid of evidence showing intent to transact electronically *with respect to the subscription of the agreement*" (emphasis added)).

parties' conduct."). As in *SN4*, the record contains no express agreement between the parties to electronically sign a settlement agreement. 848 N.W.2d at 567. Although the district court inferred the existence of such an agreement, the Rhodeses argued to the district court that they did not agree to electronically sign a settlement agreement. And the evidence does not support a determination as a matter of law that the parties' conduct evinced an intent to sign a settlement agreement electronically. This record therefore does not contain evidence allowing a determination as a matter of law that the parties agreed to electronically sign a settlement agreement.

Nor does the record contain evidence of a signed mediated settlement agreement. The district court speculated that "a signed writing *almost certainly exists*." (Emphasis added.) But no such document appears in the record. We acknowledge that an email signature can be an electronic signature under the UETA, *SN4*, 848 N.W.2d at 568, but this record does not contain any email from the Rhodeses' counsel accepting the mediator's proposed Option A. The mediator's email does not contain "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Minn. Stat. § 325L.02(h). And, again, the Rhodeses disputed the existence of a signed agreement before the district court.[6] On this

---

[6] Stockwell moved to enforce the settlement agreement after the close of discovery. At oral argument before this court, counsel for the parties represented that they did not conduct formal discovery regarding the underlying facts giving rise to the motion to enforce the settlement agreement and that neither counsel was aware of the substance of communications between the mediator and the Rhodeses' counsel who represented them at mediation and before the district court.

10

record, it is not possible to conclude as a matter of law that a signed mediated settlement agreement exists.

## DECISION

We hold that a party's authorized attorney may sign a "mediated settlement agreement" on behalf of that party. Accordingly, the district court did not err in determining that the Rhodeses' counsel could have signed a mediated settlement agreement on their behalf if authorized to do so. But we reverse and remand to the district court for further proceedings because it is not possible on this record to conclude (1) that the parties agreed to electronically sign a mediated settlement agreement or (2) that a signed mediated settlement agreement exists, and the Rhodeses dispute the validity of any mediated settlement agreement. On remand, the district court may in its discretion reopen the record, including allowing for additional discovery.

**Reversed and remanded.**