Ben GUST, Plaintiff, Appellant and Cross–Appellee,

v.

**PEOPLES AND ENDERLIN STATE BANK, Defendant, Appellee and Cross–Appellant.**

Civ. No. 880378.

Supreme Court of North Dakota.

Nov. 3, 1989.

DeMars, Turman & Johnson, Ltd., Fargo, for plaintiff, appellant and cross-appellee; argued by Joseph A. Turman and Jonathan R. Fay.

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendant, appellee and cross-appellant; argued by Jack G. Marcil.

GIERKE, Justice.

Ben Gust appeals from a judgment holding him liable to Peoples and Enderlin State Bank [Bank] on a promissory note for $238,651.38. The Bank has cross-appealed from a part of the judgment which rescinded a settlement agreement, promissory note, and warranty deed, and quieted title to certain real property in Gust. We affirm in part, reverse in part, and remand for further proceedings.

In April 1984, Gust, an elderly farmer from Leonard, was approached by his nephew, James Nygard, who requested that Gust borrow sufficient funds from the Bank to allow Nygard to obtain an operating line of credit and to repay other debts which were past due from his farming operation. At the time, Gust owned approximately three quarter sections and one 80–acre parcel of farmland in Cass County. The land was subject to minimal indebtedness.

On April 23, 1984, the Bank loaned Gust $174,000. To secure the loan, the Bank took a mortgage on two quarter sections of Gust's land. The standard form mortgage document had "COLLATERAL REAL ESTATE MORTGAGE" typed at the top. The Bank typed the following language at the bottom of the document: "The parties agree that this mortgage constitutes a collateral real estate mortgage pursuant to North Dakota Century Code Chapter 35–03." The stated maturity date of the promissory note and mortgage was January 15, 1985. Gust then endorsed the loan proceeds over to Nygard and took a promissory note from Nygard for $174,000.

Gust failed to pay the note on January 15, 1985, and on March 13, 1985, after Gust made a payment of interest and a partial payment of principal, the Bank extended the promissory note to January 30, 1986. On January 27, 1986, the promissory note was again extended to February 1, 1987, in consideration of Gust's payment of interest. The Bank did not file an addendum continuing the effectiveness of the mortgage lien as provided by § 35–03–17, N.D. C.C.[1]

---

1. Section 35–03–17, N.D.C.C., provides:
   "*35–03–17. Collateral real estate mortgages.* A mortgage which contains the following statement in printed or typed capital letters: 'THE PARTIES AGREE THAT THIS MORTGAGE CONSTITUTES A COLLATERAL REAL ESTATE MORTGAGE PURSUANT TO NORTH DAKOTA CENTURY CODE CHAPTER 35–03', is subject to the provisions of this section. A mortgage executed pursuant to this section must be entitled in printed or typed capital letters: 'MORTGAGE—COLLAT-

   ERAL REAL ESTATE MORTGAGE'. A mortgage made pursuant to this section, notwithstanding the fact that from time to time during the term thereof no indebtedness is due from the mortgagor to the mortgagee, constitutes a continuing lien against the real property covered thereby for the amount stated in the mortgage. Any sums not exceeding the face amount of the mortgage, together with interest thereon as provided in the instrument secured by the mortgage, advanced by the mortgagee during the term of the mortgage

Gust did not pay the note when due in February 1987. In May 1987, Gust and the Bank entered into a settlement agreement. As part of the agreement, Gust acknowledged that he was in default and that the Bank had a mortgage on the two quarter sections of land. Gust conveyed the real estate covered by the mortgage to the Bank by warranty deed which was recorded on May 15, 1987. In exchange, the Bank credited Gust's account for $140,000, and the parties executed a new promissory note for $61,661.53 representing the balance of the amount owed by Gust to the Bank.

In September 1987, Gust commenced this action to rescind the May 1987 settlement agreement, promissory note, and warranty deed. The Bank counterclaimed for a money judgment on the original April 1984 promissory note in the event the court granted Gust's request for rescission. On February 29, 1988, the court granted Gust's motion for partial summary judgment determining that the April 1984 collateral real estate mortgage had lapsed under the provisions of § 35–03–17 and was invalid and otherwise unenforceable at the time Gust entered into the settlement

agreement and deeded the land to the Bank in May 1987. On May 4, 1988, the court granted Gust's motion for partial summary judgment on his rescission claim. The court determined that, because the April 1984 collateral real estate mortgage had lapsed by May 1987, Gust and the Bank had entered into the settlement agreement, promissory note, and warranty deed as a result of a mutual mistake of fact and a mutual mistake of law, and that, as a matter of law, rescission of those agreements was required. On November 4, 1988, the court granted the Bank's motion for partial summary judgment on its counterclaim to enforce the original April 1984 promissory note. The court determined that the note had not been rendered unenforceable by the lapse of the collateral real estate mortgage which secured it, and that the anti-deficiency judgment statutes, §§ 32–19–06 and 32–19–07, N.D.C.C., were not applicable under the circumstances.

On December 1, 1988, the court incorporated the partial summary judgments into one judgment which quieted title to the two sections of farmland in Gust and awarded the Bank a money judgment for $238,-

---

have a lien priority as of the date the mortgage was filed. At any time the indebtedness due the mortgagee is zero, the mortgagor may demand in writing that the mortgage be satisfied, and the mortgagee shall within ten days thereafter execute and record a satisfaction thereof. Collateral real estate mortgages may be used to secure commercial, agricultural, or consumer loans or lines of credit including, but not limited to, revolving notes and credits and overdraft checking plans.

"A filed collateral real estate mortgage which states a maturity date of the instrument secured thereby of five years or less is effective until such maturity date and thereafter for a period of sixty days. Any other filed collateral real estate mortgage is effective for a period of five years from the date of filing and thereafter for a period of sixty days. A filed collateral real estate mortgage which states that the instrument secured thereby is payable on demand is effective for five years from the date of filing and thereafter for a period of sixty days. The effectiveness of a filed collateral real estate mortgage lapses upon the expiration of the sixty-day period unless an addendum to the collateral real estate mortgage extending its effective date is filed prior to the lapse. Upon such lapse, the lien created by the collateral real estate mort-

gage terminates. An addendum continuing the effectiveness of the lien of the collateral real estate mortgage may be filed by the mortgagee:

"1. Within six months before and sixty days after a stated maturity date of five years or less; and

"2. Otherwise within six months before and sixty days after the expiration of the five-year effective date period.

"An addendum to a collateral real estate mortgage for the sole purpose of continuing the effectiveness of its lien need be signed only by the mortgagee. Upon the timely filing of such an addendum to a collateral real estate mortgage, the effectiveness of the collateral real estate mortgage will be continued for five years after the stated maturity date in those instances where the original collateral real estate mortgage provided a maturity date or for five years after the expiration of the five-year period whereupon it lapses in the same manner as provided above unless another addendum to the collateral real estate mortgage continuing the effectiveness of its lien is filed prior to such lapse. Succeeding addendums to collateral real estate mortgages may be filed in the same manner to continue the effectiveness of the lien of the collateral real estate mortgage."

651.38 on the April 1984 promissory note. Both parties have appealed.

■ The Bank initially asserts that the April 1984 mortgage was not a collateral real estate mortgage, but was a standard real estate mortgage because it does not comply with the technical requirements of § 35–03–17. The Bank contends that because the statement, "The parties agree that this mortgage constitutes a collateral real estate mortgage pursuant to North Dakota Century Code Chapter 35–03," was typed in lower case, rather than capital letters as required by the statute, it cannot be construed as a collateral real estate mortgage. We reject this argument.

The logical purpose for the statutory requirement that the statement be printed or typed in capital letters is to provide conspicuous notice to the borrower that the mortgage is subject to the provisions of § 35–03–17. There is no dispute that the Bank prepared the April 1984 mortgage and typed the challenged language in the document. The Bank, as the drafter of the document, is in no position to claim that it did not have actual notice that the mortgage constituted a collateral real estate mortgage. *Cf. Hamilton Metals v. Blue Valley Metal,* 763 S.W.2d 225, 227 (Mo.Ct. App.1988); *Hoffman v. Halter,* 417 N.W.2d 747, 750–751 (Minn.Ct.App.1988). We agree with the trial court that, under these circumstances, the Bank cannot "attack its own mortgage for its own failure to capitalize certain words within the mortgage that it utilized."

■ Gust asserts that the trial court erred in concluding that the Bank's direct suit on the April 1984 promissory note was not prohibited by the anti-deficiency judgment statutes. The court reasoned that because the Bank had failed to file an addendum continuing the effectiveness of the lien, the collateral real estate mortgage had terminated under the express provisions of § 35–03–17. Because there was no foreclosure and the Bank was no longer technically a mortgagee, the court applied the general rule that a " 'note and mortgage are separate contracts, each with its own remedy....' " [*Mischel v. Austin,*

374 N.W.2d 599, 600 (N.D.1985) (quoting *Lincoln Nat'l Life Ins. Co. v. Kelly,* 73 N.D. 622, 628, 17 N.W.2d 906, 909 (1945)) ], and concluded that the anti-deficiency judgment statutes did not preclude the Bank from suing on the note.

The legislative history of § 35–03–17 reflects that its purpose was to create a real estate mortgage which would allow lenders and borrowers more flexibility in their lending relationships. *See* Minutes of the Senate and House Industry, Business, and Labor Committees on Senate Bill 2343 (1983). A collateral real estate mortgage permits the lender to file one mortgage with a stated face amount with the actual debt owed during the term of the mortgage fluctuating based on the credit needs of the borrower. *See* Minutes, *supra.* Although the statute provides for various time periods with respect to the effectiveness of the mortgage, it also allows the lender to file an addendum, within a prescribed period of time, to continue the effectiveness of the lien. Neither the express terms of § 35–03–17, nor the legislative history of the statute, suggests that the anti-deficiency judgment statutes were intended to be inapplicable to collateral real estate mortgages, and the Bank has acknowledged that the anti-deficiency judgment statutes would apply if its mortgage had not terminated.

When "a promissory note is executed in conjunction with the taking of a mortgage, the provisions of the State's anti-deficiency statutes apply." *Mischel v. Austin, supra,* 374 N.W.2d at 600. Section 32–19–07, N.D. C.C., provides in relevant part:

"Except as otherwise provided in sections 32–19–04 and 32–19–06, neither before nor after the rendition of a judgment for the foreclosure of a real estate mortgage or for the cancellation or foreclosure of a land contract made after July 1, 1951, shall the mortgagee or vendor, or the successor in interest of either, be authorized or permitted to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage or contract so foreclosed. It is the intent of this section that no

deficiency judgment shall be rendered upon any note, mortgage, or contract given after July 1, 1951, to secure the payment of money loaned upon real estate or to secure the purchase price of real estate, and in case of default the holder of a real estate mortgage or land contract shall be entitled only to a foreclosure of the mortgage or the cancellation or foreclosure of the contract except as provided by sections 32–19–04 and 32–19–06." [2]

2. Section 32–19–04, N.D.C.C., provides:

"*32–19–04. What complaint shall state.*—In an action for the foreclosure or satisfaction of a mortgage, the complaint shall state whether any proceedings have been had at law or otherwise for the recovery of the debt secured by such mortgage, or any part thereof, and if there have been, whether any and what part thereof has been collected. The plaintiff shall also state in his complaint whether he will in a later and separate action demand judgment for any deficiency which may remain due to him after sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage."

Section 32–19–06, N.D.C.C., provides:

"*32–19–06. What judgment must contain— Deficiency judgments and other suits prohibited in excess of amount by which debt exceeds fair value of mortgaged premises—Determination of fair value of mortgaged real property.* In any action for the foreclosure of a real estate mortgage or the cancellation or the foreclosure of a land contract, the court may render judgment for the amount found to be due at the time of the rendition of the judgment, and the costs of the action, and may order and decree a sale of the premises described in the mortgage or contract or that part thereof as may be sufficient to pay the amount adjudged to be due and the costs of the action. The court may order and compel delivery of the possession of the premises to the purchaser at the sale, but in no case may the possession of the premises sold be delivered until after the expiration of the one-year redemption period unless otherwise allowed by the court pursuant to section 32–19–19. The court shall direct, and the judgment must provide, that during the redemption period the debtor or owner of the premises is entitled to the possession, rents, use, and benefit of the real property sold except as provided by section 32–19–19. The court may not render a deficiency judgment for any sum whatever against the mortgagor or purchaser, or the successor in interest of either, except as hereinafter provided. Where a note or other obligation and a mortgage upon real property have been given to secure a debt contracted after July 1, 1951, and the sale of the mortgaged premises has failed to satisfy in full the sum adjudged to be due and the costs of the action, the plaintiff may, in a separate action, ask for a deficiency judgment, if the plaintiff has so indicated in the complaint, against the party or parties personally liable for that part of the debt and costs of the action remaining unsatisfied after the sale of the mortgaged premises. The separate action for a deficiency judgment must be brought within ninety days after the sale of the mortgaged premises. The court, in the separate action, may render a deficiency judgment against the party or parties personally liable, but the deficiency judgment may not be in excess of the amount by which the sum adjudged to be due and the costs of the action exceed the fair value of the mortgaged premises. In case the mortgaged premises sell for less than the amount due and to become due on the mortgaged debt and costs of sale, there is no presumption that the premises sold for their fair value. In all actions brought for a deficiency judgment and before any judgment can be rendered therein, the determination of the fair value of the mortgaged premises must first be submitted to a jury at a regular term or to a jury impaneled for that purpose, and no deficiency judgment may be rendered against the party or parties personally liable unless the fair value of the mortgaged premises is determined by the jury to be less than the sum adjudged to be due and the costs of the action. Fifteen days' notice of the time and place when or where the fair value of the mortgaged premises is to be determined must, in all cases, be given, as the court may direct, to the party or parties against whom personal judgment is sought. At that time and place the party or parties may offer evidence to show the fair value of the mortgaged premises even though they may not have otherwise appeared in the action for a deficiency judgment. Any deficiency judgment obtained must be enforced by execution as provided by law, except that no execution may be enforced after three years from the date of the rendition of the deficiency judgment. The mortgagee or vendor or the successor in interest of either is not permitted or authorized either before or after the rendition of a judgment for the foreclosure of a real estate mortgage or the cancellation or the foreclosure of a land contract, if the mortgage or contract was made after July 1, 1951, to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage or contract so foreclosed or canceled in excess of the amount by which the debt and the costs of the action exceed the fair value of the mortgaged premises. The fair value must be determined by a jury in the same manner as the fair value is determined in cases where a deficiency judgment is sought in an action to foreclose the mortgage and such judgment must be enforced by execution as provided by law except that the execution may not be enforced after

In *Dakota Bank and Trust Co. of Fargo v. Funfar*, 443 N.W.2d 289, 292 (N.D.1989), we said:

"The import of our anti-deficiency judgment statutes is clear. Except under very limited circumstances, a 'mortgagee ... shall not be permitted or authorized either before or after the rendition of a judgment for the foreclosure of a real estate mortgage ... to bring *any action* in any court in this state for the recovery of *any part of the debt secured by the mortgage* ... in excess of the amount by which such debt and the costs of the action exceed the fair value of the mortgaged premises.' Section 32–19–06, N.D.C.C. [Emphasis added.] ... In recognition of this clear legislative policy against deficiency judgments in real estate litigation, we have rejected numerous attempts to circumvent the plain intent of these statutes. *See, e.g., Hagan v. Havnvik*, 421 N.W.2d 56, 60–61 (N.D. 1988); *Schiele v. First National Bank of Linton*, 404 N.W.2d 479, 483–485 (N.D. 1987); *Mischel v. Austin*, 374 N.W.2d 599, 600 (N.D.1985); *H & F Hogs v. Huwe*, 368 N.W.2d 553, 555–556 (N.D. 1985)." [Emphasis in original].

We reject the Bank's argument that the anti-deficiency judgment statutes are inapplicable under the circumstances and that it is free to pursue its action on the promissory note because its collateral real estate mortgage had lapsed under the terms of § 35–03–17. If we were to accept the Bank's argument, a lender would be permitted to evade the strictures of the anti-deficiency judgment statutes through a conscious decision to allow its collateral real estate mortgage to lapse, if the value of the mortgaged property had declined and the borrower had sufficient other unencumbered property to satisfy the debt. The applicability of the anti-deficiency judgment statutes would, in effect, depend upon the whims of the lender. In view of the Legislature's "avowed public policy against deficiency judgments" in real estate litigation [*Dakota Bank and Trust Co. of Fargo v. Funfar, supra*, 443 N.W.2d

three years after the date of the rendition of

at 293], we do not believe that this was the Legislature's intention in enacting § 35–03–17.

Gust, relying upon *Loraas v. Connolly*, 131 N.W.2d 581 (N.D.1964), asserts that the Bank is prohibited from recovering any part of the debt because, under the anti-deficiency judgment statutes, the promissory note was rendered unenforceable by the lapse of the mortgage. In *Loraas v. Connolly*, the plaintiff sued to recover $5,000 allegedly due on a $20,000 note which had been secured by a real estate mortgage. Upon the defendants' payment of $15,000 on the note, the plaintiff gave the defendants a satisfaction of their mortgage, but there was no "agreement as to what the effect of the transaction should be." *Loraas v. Connolly, supra*, 131 N.W.2d at 584. The court noted that the release or satisfaction of a mortgage presumptively extinguishes the debt it was given to secure, but determined that the presumption was rebutted by "conclusive evidence that plaintiff did not intend to satisfy the debt in full when he executed the release of the mortgage." *Loraas v. Connolly, supra.* The court reviewed the anti-deficiency judgment statutes and stated:

"[Section 32–19–06] sets forth the procedure to be followed in actions for a deficiency judgments [sic] and actions subsequent to foreclosure. Section 32–19–04 and 32–19–06, supra, permit separate actions for deficiencies, and actions after foreclosure in the case of mortgages executed subsequent to July 1, 1951. They do not authorize actions upon a debt secured by a real property mortgage only, without resort to foreclosure. Since all actions upon the debt, or any part thereof, except as authorized by the foregoing sections, are barred, it follows that a mortgagee may not bring an action upon the secured debt, against the mortgagor, without resort to foreclosure. *Thus where, as in this case, the mortgagee, satisfies his mortgage, without an agreement with the mortgagor as to what the effect of the satisfaction shall be, the mortgagee may not thereafter*

the judgment."

*bring an action against the mortgagor for any part of the debt."* Loraas v. Connolly, supra, 131 N.W.2d at 586 [Emphasis added].

*Loraas v. Connolly* is distinguishable. That case involved the "satisfaction" of a mortgage, which affects the underlying debt itself. In this case, the mortgage lapsed by operation of § 35–03–17, which is silent regarding the effect of such a termination on the underlying debt. Moreover, in *Loraas v. Connolly*, there was consideration for the satisfaction. There was no consideration here and there is no evidence that the Bank intended to satisfy any part of the debt. Although we believe the Legislature, through enactment of § 35–03–17, did not intend to leave the applicability of the anti-deficiency judgment statutes to the total discretion of lenders, we also do not believe that it intended to punish lenders when a mortgage has lapsed pursuant to the statute by depriving them of any remedy whatsoever.

■ The statute authorizing collateral real estate mortgages was intended to benefit both the lender and the borrower. "We must weigh the interests of borrowers and lenders, as mortgagors and mortgagees, in keeping with the well-defined purpose of the anti-deficiency statutes." *Schiele v. First Nat'l Bank of Linton,* 404 N.W.2d 479, 484–485 (N.D.1987). Accordingly, we conclude that when a collateral real estate mortgage has inadvertently lapsed pursuant to § 35–03–17, the lender is not completely barred from any remedy. *See Westgard v. Farstad Oil, Inc.,* 437 N.W.2d 522 (N.D.1989). To prevent unjust enrichment of the borrower and to provide restitution to the lender, an equitable remedy should be implied. *Martian v. Martian,* 399 N.W.2d 849, 852 (N.D.1987). In this case where the property is still available for application to the debt, the lender may proceed to enforce the particular remedy of an equitable lien against the property which was mortgaged as security. We believe that this approach is a logical accommodation which serves the underlying purposes of both the anti-deficiency judgment

statutes and the collateral real estate mortgage statute.

Therefore, we conclude that the trial court erred in awarding the Bank a personal judgment against Gust. That part of the judgment is reversed and the case remanded for further proceedings consistent with this opinion.

The Bank asserts that the trial court erred in granting summary judgment in favor of Gust on his action for rescission of the May 1987 settlement agreement, promissory note, and warranty deed. We disagree.

■ Summary judgment is appropriate when there is no dispute as to material facts, or when, although factual disputes exist between the parties, the law is such that resolution of the factual disputes will not change the result. *E.g., Union State Bank v. Woell,* 434 N.W.2d 712, 716 (N.D. 1989). On appeal we determine whether, viewing the evidence in the light most favorable to the losing party and giving that party the benefit of all favorable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts. *E.g., Ostlund Chemical Co. v. Norwest Bank,* 417 N.W.2d 833, 835 (N.D.1988).

■ The trial court ruled that rescission of the May 1987 settlement agreement, promissory note, and warranty deed was required as a matter of law based upon mistake of fact and mistake of law because of "the parties' mistaken belief that they were dealing with a valid mortgage when they entered into the settlement agreement."

Rescission of a contract is permitted if the consent of the party rescinding was given by mistake. Section 9–09–02(1), N.D. C.C. A mistake of fact is a "mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in: 1. An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or 2. Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a

thing which has not existed." Section 9–03–13, N.D.C.C. A mistake of law "arises from: 1. A misapprehension of the law by all parties, all supposing that they knew and understood it and all making substantially the same mistake as to the law; or 2. A misapprehension of the law by one party of which the others are aware at the time of contracting, but which they do not rectify." Section 9–03–14, N.D.C.C.

It is undisputed that at the time the parties executed the May 1987 settlement agreement, promissory note, and warranty deed they erroneously believed that the April 1984 collateral real estate mortgage was valid and enforceable. The parties' mutual mistake as to the status of the collateral real estate mortgage was clearly material to the formation of the agreement. The agreement states that the Bank's collateral real estate mortgage served as security for Gust's indebtedness and that "Gust and Bank have been negotiating with a view toward resolving all outstanding credit obligations between Ben Gust and Bank and the legal remedies available to each party on the enforcement of these credit obligations." Gust entered into the agreement because he feared the "public humiliation" that would occur if the Bank brought proceedings to foreclose the collateral real estate mortgage.

We reject the Bank's contention that Gust is not entitled to rescission because he failed to discover before entering into the settlement agreement that the collateral real estate mortgage had lapsed. A negligent failure of a party to know or discover the facts as to which *both parties*

are mistaken does not preclude rescission as a remedy. *See Beachcomber Coins, Inc. v. Boskett,* 166 N.J.Super. 442, 400 A.2d 78, 79 (1979); Restatement, Contracts § 508 (1932); Restatement 2d, Contracts § 157 (1981). *Compare Rink v. NPN, Inc.,* 419 N.W.2d 194 (N.D.1988) and *Security State Bank of Wishek v. State,* 181 N.W.2d 225 (N.D.1970), involving unilateral mistakes. Under these circumstances, we agree with the trial court that, viewed either as a mutual mistake of fact under § 9–03–13(2), or of law under § 9–03–14(1), the parties' erroneous belief as to the validity of the collateral real estate mortgage warrants rescission of the May 1987 settlement agreement, note, and deed as a matter of law.

Accordingly, we affirm that part of the judgment which rescinds the May 1987 settlement agreement, promissory note, and warranty deed; reverse that part of the judgment awarding the Bank a personal judgment against Gust; and remand for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and MESCHKE and LEVINE, JJ., concur.

VANDE WALLE, J., concurs in result.