FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Receiver for First State
Bank of Regent, North Dakota, Plaintiff
and Appellee,

v.

Frank JAHNER, Defendant
and Appellant,

and

Francis Jahner and Teresa
Jahner, Defendants.

Civ. No. 920285.

Supreme Court of North Dakota.

Sept. 8, 1993.

Pearce & Durick, Bismarck, for plaintiff and appellee; argued by Lawrence A. Dopson.

Howe, Hardy, Galloway & Maus, PC, Dickinson, for defendant and appellant; argued by Michael J. Maus.

MESCHKE, Justice.

Frank Jahner appeals from a judgment for Federal Deposit Insurance Corporation (FDIC), as Receiver for First State Bank of Regent, North Dakota, enforcing his guaranty of a debt. We affirm.

Frank Jahner's son, Francis Jahner, purchased a lumber business, Regent Lumber, in 1976. Francis borrowed operating funds from the First State Bank of Regent (the Bank). The loan was secured by an $80,500 loan guaranty executed by Frank Jahner. Francis Jahner and Teresa, his spouse, incorporated the business as Regent Lumber Company, Inc., in 1979. Francis and Teresa were the only stockholders.

The corporation borrowed $175,000 from the Bank in 1981 and from time to time thereafter borrowed additional funds from the Bank. In early 1987, Francis Jahner stopped being active in the business, and he and Teresa moved out of the area. Marvin Jahner, Francis's brother, took over management of the business in April 1987. Marvin executed notes to the Bank evidencing renewals of prior corporate indebtedness and new loans.

The lumber business was closed in 1988. The inventory, a truck, and a forklift were sold to Farmers Union Oil Company of Regent. Proceeds of the sale of the corporation's assets were insufficient to repay the Bank. The Bank sued Frank Jahner in 1989 to enforce a guaranty that was asserted to have been executed by him on April 22, 1981, and that guaranteed all indebtedness of Regent Lumber Company, Inc. to the extent of $80,500.

The Bank was closed in 1990, and FDIC was appointed its receiver. FDIC intervened in the action against Frank Jahner and filed an amended complaint. Frank Jahner denied signing the 1981 loan guaranty and contended that Marvin Jahner had no authority to borrow funds for Regent Lumber Company, Inc.

The jury returned a special verdict finding (1) that Frank Jahner did "enter into a contract of personal guaranty with First State Bank of Regent by signing a written agreement on or about April 22, 1981," and (2) that Marvin Jahner did "act as an agent for Regent Lumber Company, Inc., in the execution of promissory notes dated 11/7/87, 12/4/87, 1/4/88, 3/11/88, 4/1/88 and 12/30/88." The trial court entered a judgment for FDIC against Frank Jahner for $80,500 plus costs. Frank Jahner appealed.

## I. Deposition Evidence

■ Frank Jahner contends that under Rule 32(a)(3), NDRCivP, the trial court erred in allowing the evidentiary use of the deposition of Paul Richter, who had been the executive officer and majority stockholder of the Bank. Rule 32(a)(3), NDRCivP, says:

The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

(A) that the witness is dead; or

(B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or

(C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or

(D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or

(E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

FDIC sought to use only a small portion of the deposition to show that Frank had signed the disputed guaranty. After the trial court allowed that evidence, both parties caused additional parts of the deposition to be read into the record. We deem significant only the deposition testimony that Frank signed the guaranty.

Frank Jahner contends that Richter's deposition was inadmissible because FDIC did not prove any of the circumstances listed in NDRCivP 32(a)(3). Counsel for FDIC told the trial court that Richter was in South Dakota and unavailable as a witness. Counsel for Frank argued: "I don't think the Court can take a statement of Counsel as evidence. You have to have an attempt to subpoena him." Nevertheless, the trial court admitted the deposition.

■ The admission of deposition testimony lies within the trial court's discretion, and reversal is appropriate only upon a clear showing that the trial judge abused his discretion. *Alfonso v. Lund,* 783 F.2d 958, 961 (10th Cir.1986). Frank now contends that, at the time of trial, Richter was in Regent, North Dakota, less than 100 miles from the place of trial. Yet, when FDIC counsel represented at trial that Richter was in South Dakota, Frank did not dispute that representation, but argued that the trial court could not accept a statement of counsel as evidence. *Ikerd v. Lapworth,* 435 F.2d 197, 205 (7th Cir.1970), upheld a trial court's admission of a deposition when the proffering counsel represented that the Indiana deponent was in California and could not be present for trial, opposing counsel said they would independently try to verify the representation, and the court advised opposing counsel that, "unless they established to the contrary, [the] deposition would be accepted upon the representation made that [the witness] was outside the jurisdiction of the court."

■ The North Dakota Rules of Professional Conduct, at Rule 3.3(a), direct: "A lawyer shall not: (1) Make a statement to a tribunal of fact or law that the lawyer knows to be false; ..." Moroever, the Comment to that rule explains that "an assertion purporting to be on the lawyer's own knowledge, as ... in a statement to the tribunal, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry." A trial court does not abuse its discretion in relying on a procedural representation of counsel that is not contradicted by opposing counsel.

Moreover, Richter's deposition testimony that Frank signed the disputed guaranty was cumulative of the testimony of Francis Jahner and Mandan Police Chief Dennis Rohr that Frank signed it. Under these circumstances, we conclude that the trial court did not abuse its discretion in allowing evidentiary use of Richter's deposition testimony.

## II. D'Oench Doctrine

Frank Jahner contends that the trial court erred in refusing to admit evidence of the

fact that he did not knowingly sign the disputed guaranty, even though Frank's primary defense at trial was that he did not sign the guaranty. The trial court precluded Frank from introducing evidence that, if he did sign the guaranty, he didn't knowingly sign it.

Beginning with *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), a body of law has developed to protect the FDIC from many collection defenses that are not apparent in an insured bank's records. In *D'Oench*, the FDIC sued on an unpaid note that it acquired through the assumption of an insured bank's deposit liabilities by another bank. The maker of the note alleged that the note was given without any consideration and with the understanding that no suit would be brought thereon. The Supreme Court quoted related statutes and invalidated the asserted defense for several reasons:

These provisions reveal a federal policy to protect respondent and the public funds which it administers against misrepresentations as to the securities or other assets in the portfolios of the banks which respondent insures or to which it makes loans.

315 U.S. at 457, 62 S.Ct. at 679, 86 L.Ed. at 962.

Public policy requires that a person who, for the accommodation of the bank, executes an instrument which is in form a binding obligation, should be . estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced.

315 U.S. at 459, 62 S.Ct. at 680, 86 L.Ed. at 963, quoting *Mount Vernon Trust Co. v. Bergoff*, 272 N.Y. 192, 5 N.E.2d 196, 197 (1936).

It needs no argument to demonstrate that the integrity of ostensible assets has a direct relation to solvency.

.　　　.　　　.　　　.　　　.

If the secret agreement were allowed as a defense in this case the maker of the note would be enabled to defeat the purpose of the statute by taking advantage of an undisclosed and fraudulent arrangement

which the statute condemns and which the maker of the note made possible.

315 U.S. at 461, 62 S.Ct. at 681, 86 L.Ed. at 964. This view, excluding nearly all defenses not apparent from a bank's records, is well-known as the *D'Oench* doctrine.

The *D'Oench* doctrine has been supplemented by legislation. 12 U.S.C.S. § 1823(e) says:

*Agreements against interests of Corporation.* No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 11 [12 USCS § 1821], either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

*D'Oench* and § 1823 have been expansively construed by the courts to protect the FDIC. As the court said in *Langley v. FDIC*, 484 U.S. 86, 91–92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340, 347 (1987):

One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Such evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities, see 12 U.S.C. §§ 1817(a)(2), 1820(b), and when the FDIC is deciding whether to liquidate a failed bank, see § 1821(d), or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank, see §§ 1823(c)(2), (c)(4)(A). The last kind of evaluation, in particular, must

be made "with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." *Gunter v. Hutcheson,* 674 F.2d [862], at 865 [11th Cir.1982]. Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions. "[N]either fraud in the inducement nor knowledge by the FDIC is relevant to the section's application." *Langley,* 484 U.S. at 93, 108 S.Ct. at 402, 98 L.Ed.2d at 348. "[T]he FDIC is also immune from the defense of failure of consideration on notes it acquires in the execution of a purchase and assumption transaction, for value, in good faith, and without actual knowledge of the failure of consideration claim at the time it enters into the purchase and assumption agreement." *FDIC v. Leach,* 772 F.2d 1262, 1267 (6th Cir.1985). As *Bowen v. FDIC,* 915 F.2d 1013, 1016 (5th Cir.1990), explains, the *D'Oench* doctrine seeks to ensure that FDIC examiners can accurately assess the condition of a bank from its records.

■ While broadly protective of the FDIC, the *D'Oench* doctrine does not, however, completely bar all collection defenses not evident from a bank's records:

> Respondent conceded at oral argument that the real defense of fraud in the factum—that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents, ...—would take the instrument out of § 1823(e), because it would render the instrument entirely void, ..., thus leaving no "right, title or interest" that could be "diminish[ed] or defeat[ed]." ... Petitioners have never contended, however, nor could they have successfully, that the alleged misrepresentations about acreage or mineral interests constituted fraud in the factum. It is clear that they would constitute only fraud in the inducement, which renders the note voidable but not void.... The bank therefore had and could transfer to the FDIC voidable title, which is enough to constitute "title *or* interest" in the note.

*Langley v. FDIC,* 484 U.S. at 93–94, 108 S.Ct. at 402, 98 L.Ed.2d at 348. But, the *D'Oench* doctrine does bar the defense of fraud in the inducement.

■ Frank Jahner contends that if he did sign the guaranty, the trial court erred in precluding him from introducing evidence that he did not knowingly sign the guaranty. This position is undercut somewhat by Frank's testimony that he "would sign whatever Mr. Richter," the Bank officer with whom he dealt, asked him to sign.

■ The evidence shows, and the jury found, that Frank did sign the guaranty. One's outward manifestation of contractual assent controls, not a secret intention. *National Bank of Harvey v. International Harvester Co.,* 421 N.W.2d 799 (N.D.1988). Frank's signature on the loan guaranty was an outward manifestation of contractual assent that the FDIC was entitled to rely upon. If the signature had not been genuine, then the FDIC could not have prevailed, but the genuineness of the signature was established by the jury's verdict and the evidence supporting it.

As *Langley v. FDIC* indicates, fraud in the factum might have defeated the FDIC's claim. However, Frank did not claim that the Bank procured his signature on the guaranty without knowledge of its true nature or contents through any type of fraud or trickery. We conclude that the trial court did not err in precluding evidence that Frank did not knowingly sign the guaranty. As stated in *Langley v. FDIC,* 484 U.S. at 92, 108 S.Ct. at 402, 98 L.Ed.2d at 347–48, quoting *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. at 460, 62 S.Ct. at 681, 86 L.Ed. at 963–64, (emphasis in original), by signing the guaranty without fraud on the part of the Bank, Frank "lent himself to a *scheme or arrangement* whereby the banking authority ... was likely to be misled."

### III. Scope of Guaranty

■ Frank Jahner contends that he is liable only for the $12,030.08 remaining on a note originally issued for $175,000 and is not liable under his guaranty for any other notes because they were not renewals of notes

executed by Regent Lumber Company, Inc., but were notes later executed by Marvin Jahner when the lumber business was no longer being operated by Regent Lumber Company, Inc., and when Marvin Jahner had no authority to conduct business of the corporation. We disagree.

In its special verdict, the jury found that Marvin Jahner acted as an agent of Regent Lumber Company, Inc., in executing the disputed notes. There is sufficient evidence to support the jury's finding. Furthermore, as the trial court said, Frank Jahner's guaranty was "expressly limited to the sum of $80,500.00, and not limited to renewals of existing promissory notes." Frank Jahner's guaranty covered new and additional promissory notes, as well as renewals.

### IV. Notice of Collateral Sale

Frank Jahner contends that the trial court erred in ruling that a bill of sale signed by Francis Jahner on behalf of Regent Lumber Company, Inc., waived Frank's right to notice of disposition of collateral. Frank further contends that, because he received no notice, he is entitled to a presumption that the collateral had a fair market value equal to the amount of the debt, thereby precluding a deficiency judgment because FDIC did not prove the fair market value of the collateral. We disagree.

■ Section 41–09–50(3) of the North Dakota Century Code [U.C.C. § 9–504(3)] says:

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition, including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has

not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, he may buy at private sale.

Thus, notice of intended disposition of collateral is required unless the debtor, after default, waives notice. Voluntary surrender of collateral is not a waiver of the right to notice. *Lindberg v. Williston Indus. Supply Corp.*, 411 N.W.2d 368 (N.D.1987). A secured party's failure to provide a debtor with the required notice raises a presumption that the collateral had a fair market value equal to the amount of the debt and no deficiency judgment will be allowed unless the secured party shows that the fair market value of the collateral was less than the debt. *Id.* As *Dakota Bank & Trust Co., Fargo v. Grinde*, 422 N.W.2d 813 (N.D.1988), held, a guarantor is a "debtor" entitled to notice.

■ Although not given written notice of the intended disposition of the lumber company's inventory, truck and forklift to Farmers Union Oil Company of Regent, Frank Jahner had actual notice of the sale. Before the sale, Frank and a representative of Farmers Union Oil Company of Regent signed a document memorializing the terms of the sale of the lumber company's assets— $51,000 for the inventory; $5,000 for the forklift; and $3,500 for the truck.

Precedents are split on the question of whether actual knowledge suffices when a secured party does not send notice to a debtor as required by UCC § 9–504 [NDCC § 41–09–50]. The court in *Vermont Nat'l Bank v. Hamilton*, 149 Vt. 477, 546 A.2d 1349, 1353 (1988), held that a secured party's failure to send a notice to the debtor was

"not cured by actual notice." The court in *Adcock v. First City Bank of Alice*, 802 S.W.2d 305, 307 n. 3 (Tex.App.1990), on the other hand, held that "[a]ctual knowledge is notice" under the statute. The court in *Bondurant v. Beard Equipment Co.*, 345 So.2d 806, 809 (Fla.App.1977), held that "the defendant's actual knowledge of the expected sale was sufficient reasonable notice." "The purpose of notice under Section 679.504(3) [UCC § 9–504(3) ] is to enable the debtor to protect his interest by paying the debt, finding a buyer or being present at the sale to bid on the property or have others do so, to the end that it not be sacrificed by a sale at less than its true value." *Id.*

"A person has 'notice' of a fact when: a. He has actual knowledge of it." NDCC 41–01–11(25). And, NDCC 41–01–11(38) says, in part: "The receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending." Frank signed a "writing" describing the intended disposition. When, as here, the purpose of the notice requirement is met by the debtor's written acknowledgment of the intended disposition of collateral, the debtor's actual knowledge suffices.

The judgment is affirmed.

VANDE WALLE, C.J., and LEVINE, NEUMAN and SANDSTROM, JJ., concur.