**RED RIVER STATE BANK, Plaintiff, Appellant and Cross–Appellee**

v.

**Don A. REIERSON, Husband, and Adele M. Reierson, Also Known as Adele Reierson, His Wife, Defendants, Appellees and Cross–Appellants.**

Civ. No. 930359.

Supreme Court of North Dakota.

June 27, 1995.

Roger J. Minch, of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiff, appellant and cross-appellee.

Lowell P. Bottrell, of Anderson & Bailly, Fargo, for defendants, appellees and cross-appellants.

SANDSTROM, Justice.

Red River State Bank appeals from a judgment invalidating its mortgage against homestead property of Don A. and Adele M. Reierson, and from an amended judgment granting the bank a conditional equitable lien on that property. The Reiersons cross-appeal from the amended judgment. We conclude the trial court correctly ruled the mortgage was unenforceable against the Reiersons' homestead property because the homestead exemption waiver clause in the mortgage was not printed in a conspicuous manner, and the trial court did not abuse its discretion in granting the bank N.D.R.Civ.P. 60(b) relief to impose an equitable lien on the property subject to the Reiersons' homestead exemption so long as they occupy the property as a homestead. We therefore affirm.

## I

On June 1, 1990, the Reiersons borrowed $54,000 from the bank to pay for farm operating expenses. To secure the debt, the Reiersons granted the bank a mortgage on their Cass County homestead property which they had purchased in 1977. In February

1993, after the Reiersons failed to make the first two of 20 annual installment payments under the promissory note, the bank began this foreclosure action.

In their answer, the Reiersons asserted, as an affirmative defense, the bank's complaint failed to state a claim upon which relief could be granted because the bank did not comply with N.D.C.C. § 47–18–05.1(1), which requires a homestead exemption waiver to be printed in a conspicuous manner.

The trial court granted the Reiersons' motion for summary judgment and dismissed the foreclosure action. The trial court held the mortgage "is invalid in total and not a lien against the property ... because ... [it] did not contain a conspicuous notice as to the waiver of the homestead exemption." The court reasoned the clause was not conspicuous because it "was not different in size of type or print nor bold or contrasting such that the eye would catch the waiver language [which] ... was of the same type of print as the rest of the mortgage document."

After substituting counsel, the bank moved under N.D.R.Civ.P. 60(b) for relief from the judgment, asserting it should be entitled to an equitable lien on the property in accordance with this Court's decision in *Gust v. Peoples and Enderlin State Bank*, 447 N.W.2d 914 (N.D.1989), which had not been brought to the trial court's attention. The bank also filed an appeal from the summary judgment of dismissal. We subsequently granted the bank's motion to temporarily suspend the appeal and remand the case to the trial court for consideration of the pending Rule 60(b) motion.

After a hearing, the trial court granted the bank's motion for relief from the judgment. The court ruled the Reiersons "would be unduly enriched by the court's previous order." The court noted "the purpose of the waiver of the homestead exemption statute was to inform borrowers that they were signing away their homestead exemption rights," and held "[t]o prevent unjust enrichment, an equitable lien must be applied against" the property "subject to [the Reiersons'] homestead exemption so long as the property is occupied by [the Reiersons] as a homestead." An amended judgment was entered incorpo-

rating and altering the initial summary judgment in this fashion. The court denied the bank's later motion for reconsideration. Both the bank and the Reiersons have appealed.

The trial court had jurisdiction under Art. VI, §§ 1 and 8, N.D. Const., and N.D.C.C. § 27–05–06. This Court has jurisdiction under Art. VI, §§ 1 and 2, N.D. Const., and N.D.C.C. § 28–27–01. The appeals are timely under N.D.R.App.P. 4(a).

II

The version of N.D.C.C. § 47–18–05.1(1) in effect when this mortgage was executed provided:

"All mortgages on homesteads executed after June 30, 1987, which are not purchase money agreements must contain the following statement printed in a conspicuous manner and must be signed and dated by the person waiving the exemption at the time the contract is executed:

"I understand that homestead property is in many cases protected from the claims of creditors and exempt from judicial sale and that, by signing this contract, I voluntarily give up my right to this protection for this property with respect to claims based upon this contract."

■ The mortgage here is a typed, legal-sized, three-page document. In addition to the acknowledgment, the mortgage contains eight paragraphs. Six of the eight paragraphs have capitalized introductions: "THIS INDENTURE;" "WITNESSETH;" "TO HAVE AND TO HOLD THE SAME;" "PROVIDED, NEVERTHELESS;" "WAIVER OF HOMESTEAD EXEMPTION;" and "HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT." The remainder of each paragraph is typed in the same sized lower-case print. The homestead exemption waiver clause appears below the middle of the second page and contains, in lower-case type, the exact language required by the statute.

Because N.D.C.C. Chapter 47–18 does not define the term "conspicuous," the bank as-

serts we should adopt the Uniform Commercial Code definition of the term:

"A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous'. Whether a term or clause is 'conspicuous' or not is for decision by the court."

N.D.C.C. § 41–01–11(10) (U.C.C. § 1–201). *See also* N.D.C.C. § 51–14.1–01(5). The Official Comment to U.C.C. § 1–201 states this definition "is intended to indicate some of the methods of making a term attention-calling. But the test is whether attention can reasonably be expected to be called to it." 1 Uniform Laws Annotated, Uniform Commercial Code, at p. 71 (1989). *See also* 1 R. Anderson, *Uniform Commercial Code* § 1–201:57, at p. 211 (3rd ed. 1981) ("attention-attracting capacity is the criterion of conspicuousness").

Decisions construing the U.C.C. definition of "conspicuous" in the context of exclusions or modifications of the implied warranty of merchantability are collected and described in *Stevenson v. TRW Inc.*, 987 F.2d 288, 296 (5th Cir.1993):

"A contract's warranty disclaimer satisfies the conspicuous requirement when it is printed in all capital letters, when it appears in a larger type than the terms around it, or when it is in a larger and boldface type.... Likewise, a disclaimer in boldface type, printed in all capitals on the face of the warranty above the buyer's signature meets the definition of conspicuousness.... A disclaimer is not conspicuous, however, when it is printed in small print on the back of the document, when it is the same size and typeface as the terms around it, or when it is not in boldface or capital lettering."

(Citations omitted).

■ The homestead exemption waiver clause is imbedded within the body of the mortgage and is set forth in the same sized print as the remaining contract language.

The clause is in no way highlighted or emphasized any differently than the other paragraphs. *See Keblish v. Thomas Equipment, Ltd.*, 427 Pa.Super. 93, 628 A.2d 840, 846 (1993). Even though the language is not hidden, a clause is not conspicuous if "there is nothing to draw the reader's attention to it." *Kelley Metal Trading Co. v. Al-Jon/United, Inc.*, 812 F.Supp. 185, 189 (D.Kan.1993). If we were to accept the bank's argument, the entire mortgage would have to be considered conspicuous. But this mortgage is not so short, like a telegram, that every term must be considered conspicuous. *See Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 511 (Tex. 1993). We conclude as a matter of law the homestead exemption waiver clause is not "printed in a conspicuous manner" as required by N.D.C.C. § 47–18–05.1(1).

■ The bank asserts, even if the clause is not conspicuous, the purpose of the statutory requirement was met because Don Reierson, in deposition testimony, indicated he and his wife knew they were mortgaging their homestead to the bank. We reject this argument for several reasons.

First, the homestead exemption waiver clause is obviously intended to inform borrowers that homestead property is often protected from claims of creditors and exempt from judicial sale under the law and, by signing the mortgage, borrowers are waiving that exemption right. That borrowers know they are mortgaging their homestead is not the same as knowing they are waiving homestead exemption rights by doing so. The Reiersons claimed by affidavit they knew nothing about their homestead rights at the time the mortgage was executed.

Second, the bank's reliance on *Thompson v. Danner*, 507 N.W.2d 550 (N.D.1993), and *F.D.I.C. v. Jahner*, 506 N.W.2d 57 (N.D. 1993), for the proposition actual notice relieves parties from specific notice requirements, is misplaced. In *Thompson*, we were faced with the reasonable identification requirements for descriptions of land for purposes of a security agreement and financing statement. In *Jahner*, we were faced with the reasonable notice requirements for a

creditor's intended disposition of collateral. In both cases, we ruled the debtors' actual knowledge could satisfy the reasonable identification and reasonable notice requirements. In this case, § 47–18–05.1(1) does not impose upon lenders an obligation to "reasonably notify" mortgagors of homestead property of the homestead exemption rights they are waiving. The statute requires the mortgage itself contain a printed and conspicuous waiver clause.

Moreover, as the trial court noted, the obvious purpose of the homestead exemption waiver clause is to make borrowers aware they are waiving homestead exemption rights if they mortgage their homesteads. The legislative history of the statute reflects concern many borrowers did not know they were waiving exemption rights by mortgaging their homesteads, and borrowers should be fully informed about what they are signing. Minutes of the Senate Judiciary Committee on Senate Bill 2450, February 10, 1987, at 1 and 2, Fiftieth Legislative Assembly of North Dakota (*Minutes*). Analogized to a borrower's "Miranda rights," the homestead exemption waiver clause was viewed as the proper means of obtaining knowledgeable waivers. *Minutes* at 3. If we were to overlook the statutory requirements as the bank suggests, "it would amount to saying that the Legislature performed an idle act." *Dietz v. City of Medora*, 333 N.W.2d 702, 707 (N.D.1983).

In *Federal Land Bank of St. Paul v. Waltz*, 423 N.W.2d 799, 801 (N.D.1988), this Court confronted another piece of 1987 legislation requiring a notice before foreclosure under N.D.C.C. Chapter 32–19 to contain a specified "WARNING" statement advising the mortgagor of the right to have the property sold in parcels. The mortgagee in that case sued to foreclose, but did not include in the notice before foreclosure the required language. This Court held "strict compliance" with the statute was required and in any proceeding to foreclose a mortgage on agricultural property the notice before foreclosure is "legally insufficient" unless it includes the statutory language. *Waltz* at 802. Because the notice of foreclosure was "fatally defective," we held the foreclosure could not be "enforce[d]." *Waltz*.

■ In this case, we likewise conclude there must be strict compliance with § 47–18–05.1(1). We have recognized the constitutional and statutory homestead exemption right is an "important substantive right" to citizens of this state. *Mund v. Rambough*, 432 N.W.2d 50, 56 (N.D.1988). The Legislature, too, has accorded similar importance to this right by enacting § 47–18–05.1(5) in an effort to ensure, if borrowers waive the homestead exemption right, they do so knowingly. We conclude the bank's failure to have the homestead exemption waiver clause printed in a conspicuous manner in the mortgage renders the Reiersons' mortgage of their homestead property unenforceable.

### III

The Reiersons assert the trial court erred in granting the bank's motion for relief from the initial summary judgment under N.D.R.Civ.P. 60(b).

■ A movant for Rule 60(b) relief has the burden of establishing sufficient grounds for disturbing the finality of the judgment. *First Nat'l Bank of Crosby v. Bjorgen*, 389 N.W.2d 789, 794 (N.D.1986). The trial court must exercise sound discretion in deciding whether the movant's reasons are sufficient to set aside the judgment, and we will not disturb its decision on appeal absent an abuse of that discretion. *Bjorgen v. Kinsey*, 466 N.W.2d 553, 561 (N.D.1991).

■ The bank's request was not a belated attempt to reopen the summary judgment. The bank's counsel promptly filed an affidavit claiming excusable neglect because the bank's prior counsel was a Minnesota attorney and the bank did not contact new counsel, whose firm represented the lender in *Gust v. Peoples and Enderlin State Bank*, 447 N.W.2d 914 (N.D.1989), until shortly after the time for amending the judgment under N.D.R.Civ.P. 52(b) and 59 had expired. The bank's counsel also claimed the judgment was "no longer equitable and should not have prospective application" because of the failure of the parties to inform the court about *Gust*. The trial court recognized the discretionary nature of Rule 60(b) decisions and granted the motion for relief from judg-

ment, noting the "rule is to be granted liberal construction where there is merit in the defense or claim." *See In re Estate of Jensen*, 162 N.W.2d 861, 872–873 (N.D.1968).

We cannot say the trial court abused its discretion by granting the motion and reopening the judgment in order to benefit from additional law and argument in deciding the substantive issues.

## IV

The Reiersons assert the trial court erred in granting the bank the conditional equitable lien on their homestead property.

In *Roen Land Trust v. Frederick*, 530 N.W.2d 355, 358 (N.D.1995), this Court recently explained:

"An equitable lien is a restitution concept applied by courts of equity to avoid injustice. *See Martian v. Martian*, 399 N.W.2d 849, 852 (N.D.1987). It arises '[w]here property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched.' *Restatement of Restitution* § 161, at p. 650 (1937). An equitable lien only gives a claimant a security interest in property, which can then be used to satisfy a money claim. Dobbs, *Law of Remedies* § 4.3(3), at p. 402 (2d ed. 1993). We have often approved an equitable lien to prevent unjust enrichment of a debtor and for restitution to a creditor. *See Moen v. Moen*, 519 N.W.2d 10, 12 (N.D.1994); *Gust v. Peoples and Enderlin State Bank*, 447 N.W.2d 914, 920 (N.D.1989); *Martian*. As reflected in 51 Am.Jur.2d *Liens* § 24, at p. 163 (1970) (footnotes omitted), no one has an absolute right to an equitable lien; '[t]here must be some ground for equitable intervention, including the absence of an adequate remedy at law....'"

In *Gust*, the bank loaned money to the borrower in 1984 and took a collateral real estate mortgage on two quarter sections of the borrower's land to secure the debt. The bank, however, failed to file an addendum to the mortgage continuing the effectiveness of the lien under N.D.C.C. § 35–03–17. The mortgage lien in that case had, under the terms of the statute, lapsed and terminated.

After the borrower failed to pay the promissory note when due, the borrower and the bank entered into a settlement in 1987 in which the borrower acknowledged he was in default and the bank had a mortgage on the land. The borrower conveyed the mortgaged property to the bank and executed a new promissory note to the bank for the balance of the debt.

After discovering the prior mortgage had already lapsed at the time of the settlement negotiations, the borrower sued to rescind the 1987 settlement agreement, the new note and warranty deed to the property conveyed to the bank. The bank counterclaimed for a money judgment on the original 1984 promissory note. The trial court rescinded the 1987 transactions. The trial court also allowed the bank a money judgment on the 1984 note, concluding the lapsed mortgage did not render the note unenforceable and the anti-deficiency judgment statutes did not, under the circumstances, prohibit the bank's suit on the note.

We affirmed the trial court's rescission ruling, but reversed the court's ruling the anti-deficiency judgment statutes did not prohibit the suit on the 1984 note. We said although the Legislature, by enacting the collateral real estate mortgage law, "did not intend to leave the applicability of the anti-deficiency judgment statutes to the total discretion of lenders," it also did not intend "to punish lenders when a mortgage has lapsed pursuant to the statute by depriving them of any remedy whatsoever." *Gust* at 920. Noting the statute authorizing collateral real estate mortgages was intended to benefit both lender and borrower, we applied an equitable remedy to prevent unjust enrichment of the borrower and to provide restitution to the lender:

"In this case where the property is still available for application to the debt, the lender may proceed to enforce the particular remedy of an equitable lien against the property which was mortgaged as security. We believe that this approach is a logical accommodation which serves the underlying purposes of both the anti-deficiency

judgment statutes and the collateral real estate mortgage statute."

*Gust.*

The Reiersons contend *Gust* is distinguishable because it involved a valid mortgage that had lapsed and terminated under the collateral real estate mortgage law. According to the Reiersons, unlike *Gust*, "no equitable mortgage can be created here since there was no valid mortgage to begin with." We do not believe this distinction prohibits application of the equitable lien concept to these facts.

The terms "equitable mortgage" and "equitable lien" are closely related concepts and are often used interchangeably by courts. *See, e.g., Garnett State Sav. Bank v. Tush,* 232 Kan. 447, 657 P.2d 508, 514 (1983); *Trondson v. Janikula,* 458 N.W.2d 679, 682 (Minn.1990); *O'Connor v. Lewis,* 238 Mont. 270, 776 P.2d 1228, 1231 (1989). Technically, an equitable lien is the more inclusive term and provides a remedy for a debt by subjecting property to payment of a claim. *Hargrove v. Gerill Corp.,* 124 Ill.App.3d 924, 80 Ill.Dec. 243, 248, 464 N.E.2d 1226, 1231 (1984). On the other hand, an equitable mortgage requires an affirmative pledge of property as security for a debt and arises when money is loaned or credit given in reliance on the security of the debtor's property, but the property is pledged in such a manner as not to be enforceable as a mortgage at law. *Hargrove,* 464 N.E.2d at 1230, 1231. In effect, the equitable lien concept subsumes the more narrowly tailored equitable mortgage doctrine.

The legal invalidity or unenforceability of a mortgage is the exact situation calling for application of the equitable mortgage doctrine. *See* G. Osborne, *Handbook on the Law of Mortgages* § 22, at p. 32 (2d ed. 1970) ("Equitable mortgages are ... security transactions which fail to satisfy the requirements of legal mortgages but nevertheless are treated as mortgages in equity.") For example, in *Standorf v. Shockley,* 16 N.D. 73, 111 N.W. 622 (1907), this Court construed a chattel mortgage, actually intended as security on real property, as an equitable mortgage enforceable between the parties and others having notice. The legal invalidity or unenforceability of the mortgage in this case provides no basis for distinguishing *Gust* or for prohibiting the granting of an equitable lien or mortgage.

Here, the trial court reasoned the bank is both precluded from foreclosing because the mortgage on the homestead property is unenforceable, and forbidden from pursuing a money judgment against the Reiersons because of the anti-deficiency judgment statutes. As a result, the court concluded, the bank "is left without a remedy" and the Reiersons are "unjustifiably enriched," thereby making imposition of the conditional equitable lien appropriate. Contrary to the Reiersons' argument the bank should not be allowed any equitable remedy because it failed to comply with § 47–18–05.1(1), we do not view the bank as having "unclean hands" in this case. Although the homestead exemption waiver clause was not printed in a conspicuous manner, the mortgage did contain the exact waiver language required by the statute. The record does not suggest the bank made a deliberate effort to mislead the Reiersons into mortgaging their homestead property.

But we also disagree with the bank's argument the trial court erred in failing to grant the entire remedy applied in *Gust:* a presently enforceable equitable lien. In *Gust* at 917, 920, this Court recognized the statute authorizing collateral real estate mortgages was intended by the Legislature to benefit both lenders and borrowers by allowing more flexibility in their lending relationships. Given the dual purpose of the statute, an inadvertent lapse of the mortgage, we reasoned, should not result in a windfall to the borrower and an unjustified loss to the lender. But in this case, § 47–18–05.1(1) has no dual purpose of benefiting both lenders and borrowers. Instead, like the farm debtor protection legislation in *Waltz,* § 47–18–05.1(1) was intended to benefit only borrowers by requiring individuals giving up homestead exemption rights to be aware they are doing so through a knowing waiver of those rights. Unlike the situation in *Gust,* granting a presently enforceable lien here would benefit only the bank at the expense of the borrower, the intended beneficiary of § 47–18–05.1(1).

The bank presented evidence the equitable remedy provided by the trial court, an equi-

table lien subject to the Reiersons' homestead exemption so long as they reside on the property as a homestead, has a present value as a "remainder interest" of only $6,578.38. According to the bank, there is a prior mortgage on the property that has been assigned "to a friendly party." The bank recognizes the present value of its interest may rise if the prior mortgage is paid in full, but argues it could be entirely eliminated if the prior mortgage is foreclosed. The bank asserts its equitable remedy is valueless because it depends on "actions taken by parties friendly to the Reiersons." Notwithstanding the trial court's assurance if an agreement were made between the Reiersons and the first mortgagee to destroy the equitable lien, the court could prevent the scenario with its equitable powers, the bank argues its equitable remedy is, in fact, inequitable.

▓▓▓ When a trial court exercises its discretion after weighing the equities of a case, we will not interfere on appeal absent a showing of an abuse of discretion. *Matter of Estate of Rohrich*, 496 N.W.2d 566, 573 (N.D. 1993). We have often said "[e]quity follows the letter and the spirit of the law and courts of equity are bound by and must follow and apply the principles of substantive law." *Langenes v. Bullinger*, 328 N.W.2d 241, 246 (N.D.1982). Granting the bank's request for a presently enforceable equitable lien against the property, as the trial court recognized, would render § 47–18–05.1(1) meaningless in this case. The trial court fashioned a reasonable equitable remedy under these circumstances which balances equitable notions of fairness with the strong public policy underlying homestead exemption rights. We conclude the trial court did not abuse its discretion in granting the bank an equitable lien on the homestead property subject to the Reiersons' homestead exemption so long as they reside on the property as a homestead.

## V

The amended judgment is affirmed.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.